## REINECKE v. PELHAM.
### No. 17486.

Court of Appeal of Louisiana. Orleans.
Jan. 13, 1941.

Rehearing Denied Feb. 10, 1941.

Deynoodt & de la Vergne, of New Orleans, for appellant.

J. A. Woodville and J. L. Warren Woodville, both of New Orleans, for appellee.

JANVIER, Judge.

This is an appeal from a judgment perpetuating an injunction enjoining the judgment creditor from executing a judgment.

In November, 1932, in the Civil District Court for the Parish of Orleans, Joseph E. Reinecke secured a judgment for $1,500, interest, etc., against Mrs. Emma Pelham, divorced wife of Clyde H. Spearman. On May 28, 1940, Reinecke secured a writ of fieri facias and in connection therewith caused the issuance of a writ of garnishment under which the Civil Sheriff for the Parish of Orleans seized, in the possession of the Hibernia National Bank in New Orleans, $1,128.37, which the said bank held to the credit of the judgment debtor, Mrs. Emma Pelham Spearman. Thereupon Mrs. Spearman, in the same proceeding, petitioned the court for an injunction restraining the seizing creditor, Reinecke, and the Civil Sheriff from proceeding further with the seizure, and obtained an order requiring the said respondents to show cause why a preliminary injunction should not issue, and also, upon furnishing bond in the sum of $250, obtained a restraining order temporarily preventing further proceeding under the writ of fieri facias. In the petition for the restraining order and for the injunction, Mrs. Spearman alleged that on May 3, 1939, she had paid to Reinecke the sum of $100 in cash and had obtained from him a document signed by him and reading as follows:

"Pascagoula, May 3, 1939.

"Received of Mrs. Emma Pelham, divorced wife of Clyde H. Spearman, the sum of One Hundred dollars, in full settlement, satisfaction of the judgment rendered in the matter of Joseph E. Reinecke vs. Mrs. Emma Pelham, divorced wife of Clyde H. Spearman, No. 197,816 of the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, said judgment having been rendered on November 18, 1932, and signed on November 25, 1932, in consideration of which said judgment, I hereby grant a full complete and final release and satisfaction of the said judgment, accepting the said sum of One Hundred dollars, in full payment thereof."

Mrs. Spearman also alleged that the judgment sought to be executed had been "paid, cancelled and settled in full."

To this petition for injunction Reinecke excepted on two grounds:

(1) That the temporary restraining order was illegal for the reason that, in connection with its issuance, the district judge had not set forth his reasons for granting it, as is required by Act No. 29 of 1924, and,

(2) That the petition for injunction did not disclose any cause or right of action against Reinecke.

We may say here that this second exception is founded on the contention that, because of the provisions of Articles 1829 and 3082 of the Civil Code, there may not be a compromise of a final judgment from which there cannot be an appeal.

On the same day on which he filed these exceptions, Reinecke, reserving his rights under them, also filed an answer in which he admitted the issuance of the writ of fieri facias and the attempted seizure of the funds in the hands of the bank and in which he also admitted that he had signed and executed the document already set forth in full, but in which he averred that, since a final judgment was involved, "no compromise thereof can be made", and in which answer, also, he averred that, though he had executed the document, he had by "fraud, duress and coercion" been compelled to accept the $100 paid to him to execute the document.

The district court overruled the exception based on the failure of the judge a quo to give written reasons for the granting of the restraining order, and, in effect, referred to the merits the exception based on the theory that there can be no compromise of a final judgment. Thereupon, before evidence was introduced, counsel for Mrs. Spearman objected to the introduction of any testimony tending to show the nullity of the agreement relied on. This objection was based on two grounds: First, that no collateral attack may be made on such an agreement, which may be annulled only in a direct and independent action brought for that purpose, and, second, on the ground that no attack may be made on such an agreement evidencing the receipt of money until the status quo ante has been restored by the return of the said money. The trial court expressed the view that these objections to the introduction of evidence were well founded and that they should be sustained and all evidence tendered in attack upon the document should be excluded, but he did not so order, instead making the following statement: "* * * in view of the fact that both counsel intimated an appeal would be taken, no matter what the decision, the Court will refer the exceptions to the merits in order that the entire matter may be before the Court of Appeal."

We deem it advisable to first investigate the facts surrounding the execu-

tion of the document, and, when we do so, except for a very weak statement of Reinecke himself, we fail completely to find any evidence showing that any undue influence was exerted upon him at the time the document was executed. He and Mrs. Spearman had been friends for a great many years and on many occasions had seen each other and even since he obtained the judgment against her this friendship had continued. The record further shows that, due to financial reverses, Mrs. Spearman had found it impossible to pay the judgment which operated as a general mortgage against her. It appears that for personal reasons it became advisable to cancel this mortgage and that she approached him and explained to him her financial condition and that he agreed to execute the document in question.

There is some dispute as to whether he offered to do so gratuitously, he contending that he was not willing to execute it at all and she that he offered to do so without payment and that she insisted that something be paid to him in consideration for his signature. He states, in effect, that he was overcome by the fact that she had lost her young daughter and was grief-stricken and by the further fact that her two brothers were present and threatened him with bodily harm. He gives no details of such threats.

The evidence to the contrary, however, we find overwhelming and we cannot believe that, had such threats been made and had the $100 been placed in his pocket without his consent, as he says it was, he would have voluntarily remained thereafter with Mrs. Spearman and the other members of her family and taken dinner with them as their guest. All in all, as we have said, we find no evidence whatever that any improper force was exerted at the time of the execution of the document. Since the settlement was effected without fraud or undue persuasion or force, unless there is some legal reason which must prevent its consideration, its voluntary execution by Reinecke must be held to have effectively put an end to his right to seek execution under the judgment.

We pass on to a consideration of the contention that there are such legal reasons which do prevent its consideration.

The principal argument of Reinecke is that, because of certain articles of our Civil Code, there can be no compromise of a claim which has been converted into a judgment which has become final. Counsel for Reinecke point first to Article 3071 of our Civil Code, which contains a definition of a "transaction" or "compromise", and he argues that, since a "compromise" is defined as an agreement "for preventing or putting an end to a lawsuit", it seems obvious that, if the lawsuit has already reached its end and what was previously a claim has been transformed into a final judgment, there can no longer be a compromise. It is probable that, technically, such an agreement as was entered into between Reinecke and Mrs. Spearman should not be termed a compromise.

Counsel also cite many cases in which it has been held that "to effect a binding compromise agreement, there must be a dispute between the parties as to the amount due." Green v. National Life & Accident Insurance Co., Inc., La.App., 183 So. 604, 605. We deem it advisable to first dispose of those cases of which the Green case is typical. There are many others which are cited on behalf of Reinecke. All that is held in those cases is that, where there is made by one person to another a payment of less than the total amount due, the acceptance of the smaller amount does not effect a compromise unless there existed a dispute as to the total amount due. For instance, "A" owes "B" $500 and there is no dispute concerning that amount. "A" pays to "B" $100 and "B" accepts it. There is no compromise, but only a payment on account. But if "B" claims that "A" owes him $500 and "B" contends that he owes only $50 and then sends $100 to "B", who accepts it, there is a compromise because there was a dispute as to the amount due.

But those cases have no application at all to the situation here. Mrs. Spearman owed the amount of the judgment, $1,500. She could not pay and, apparently, Reinecke could not enforce collection. Mrs. Spearman went to Reinecke and in effect said: "I owe you $1,500.00, no part of which can be collected by force or by legal process. I have $100.00 and, if you will accept it in full settlement of the judgment, I will give it to you." Reinecke accepted and the money was paid and the document executed.

As we have said, it may be that the term "compromise" cannot properly be applied to this document because of the technical definition which our Code gives of a compromise, but we see no reason why, as a sale of the rights under the judgment, the

agreement should not be treated as completely putting an end to those rights. A reference to the French commentators will show that, in their opinions, whenever there no longer remains anything in doubt or in contest, an agreement, terminating or putting an end to such rights as admittedly exist, is not technically a "compromise", but should be regarded as a sale, if made for a consideration, and as a donation, if made without consideration. See note on page 283 of Tulane Law Review, Volume 14, in an article entitled "Compromise in Louisiana". The author of that article states in the said note that, if such an agreement is to be treated as a compromise, "the subject matter must be doubtful, or in contestation". But in the note the author goes on to state that "the French commentators observe that in the absence of this essential the contract would be a sale or donation". And the Supreme Court of Louisiana reached this conclusion in Webster v. Harman, 148 La. 1080, 88 So. 462. There it was contended that a certain agreement should be annulled because it was made by an agent or attorney-in-fact who had no authority to compromise. The Supreme Court held that the agreement was binding since it did not constitute a compromise, but a sale, and cited the following from Dalloz, Codes Annotés, art. 2044:

"A compromise can bear only on things doubtful and contestable. If there was the abandonment of an indisputable right (droi certain), there would be a sale or donation.

"It has been accordingly decided that a transaction can be considered to be a compromise only in so far as it has had for its object the ending or preventing of a lawsuit by reciprocal concessions."

■ But counsel contend that, in any event, there can never be a sale or cancellation of a final judgment for less than the amount of the judgment, and they point to Articles 1829 and 3082 of the Civil Code. These articles read as follows:

1829. "In the same manner a compromise of a suit, and any obligation made in consequence of it, is void, if, at the time, but unknown to the parties, the suit be finally decided. But if the decision be not final, but subject to appeal or revision, the compromise is valid."

3082. "A transaction respecting a suit terminated by a judgment, which acquired the force of the thing adjudged, and of which the parties, or either of them, was ignorant, is null. If, however, the judgment is one from which there could be an appeal, the transaction is valid."

It will as once be seen that the meaning of the two articles is the same, but it will also be noticed that it is not the finality of the judgment which is the reason for the nullity of the contract, but that it is the absence of knowledge on the part of either of the parties that the judgment is final, which effects this nullity. In other words, these articles do not provide that a final judgment may not be compromised or sold or cancelled for less than the amount thereof, but merely that, if the parties enter into an agreement to compromise or sell or cancel such a judgment for less than the amount thereof, not knowing that the judgment has become absolutely final, the agreement is null. But, as we have said and as we repeat, that nullity results not from the fact that the judgment is final, but solely from the fact that the parties did not know of the finality. The reason is that an agreement based on an error of fact will invalidate the agreement if the error is "in some point, which was a principal cause for making the contract". C. C. Art. 1823. Now it is evident that at least one of the parties to such an agreement would not have made it had he known that a judgment in his favor had become final. Therefore, his lack of knowledge, or his error of fact in this regard, can be said to be the principal cause of his having made the agreement.

But those articles have no application whatever here since, at the time at which the agreement was made, both parties knew that the judgment was final. And the parties also knew that Reinecke could collect nothing by legal process and he was offered the opportunity to obtain $100 in exchange for his rights under the judgment. Why his agreement to accept and to terminate his rights under the judgment should not be held binding, we are unable to see.

It is said, in behalf of Reinecke, that our views expressed in Breeland v. Kenner et ux., 174 So. 678, 679, require us to hold that the agreement cannot be treated as anything more than a receipt for the amount paid and that, if we are to follow that decision, we must hold that the rights under the judgment have not been terminated. We do not so interpret our holding in that case. There Breeland, a contractor, had obtained a judgment against

Kenner for $275, with interest and costs. After that judgment became final, Kenner desired to obtain a real estate loan from the Home Owners Loan Corporation and this corporation found that the judgment of Breeland had not been paid and might operate as a first mortgage on the property on which it intended to make the loan. It therefore withheld from Kenner the amount of the principal of the judgment, $275, and, on paying this over to Breeland, obtained from him a receipt reading as follows: "This will acknowledge the receipt from the HOLC for the amount of $275.00, being full and final settlement for repairs made by me in and to the premises and in consideration of the receipt of said sum I do now hereby waive any and all claims that I may have against the said Mrs. Frances A. Kenner, wife of Hiddleston Kenner, and Hiddleston Kenner (Home Owners), and the said described property."

Later Breeland, by rule in his original suit against Kenner, sought to force Kenner to pay interest and costs, which had not been included when the payment of $275.00 was made by the Home Owners Loan Corporation. Kenner maintained that Breeland could not be heard to claim this additional amount since he had "compromised" all his rights by the execution of the document just above quoted, but we held that there had been no compromise of those rights since, when that document was executed, there had been no dispute as to the amount due, and we held just as had been held in Green v. National Life & Accident Insurance Company, supra, and all those other cases of which the Green case is typical: That no compromise results from a payment of less than the full amount due unless there is a dispute concerning what amount is due, or unless the amount is tendered in full settlement of the whole claim. We said: "But compromise or accord and satisfaction may never be invoked in bar of a claim unless there exists a dispute between the parties as to the amount due. Here, by judgment of the First city court (affirmed by this court on appeal) the defendants had been cast to pay to the plaintiff the sum of $275, together with interest and costs. The Home Owners Loan Corporation had in its possession $275 belonging to the defendants and it merely paid to the plaintiff that amount which it had withheld from the defendants in making a loan to them, after the court had decreed that that sum was due and owing to the plaintiff. There was never any dispute or controversy between Breeland and the defendants after the finality of the judgment."

In other words, we held that the document executed by Breeland on the demand of the Home Owners Loan Corporation, constituted nothing more than a receipt for the amount of money paid to him, to-wit, $275, and that, properly interpreted, that document did not evidence an intention on the part of Breeland to effect a sale of all of his rights under the judgment, nor did it evidence an intent on the part of the Home Owners Loan Corporation to secure for Kenner a compromise of any rights, but only the intention of the Home Owners Loan Corporation to release, from the effect of the judgment of Breeland, the particular property which was involved. Although we did not refer to Article 3073 of our Civil Code, our conclusion was based on the reasons which prompted the inclusion of that article in our Code, for there it is provided that "transactions" (compromise) "do not extend to differences which the parties never intended to include in them. The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises".

To sustain the contention of Reinecke would require a holding that where a final judgment has been rendered there is nothing which the parties may effectively do to put an end to the rights under that judgment except for the judgment debtor to pay to the judgment creditor the full amount of the judgment. Surely the framers of our Code and the authors of our jurisprudence never intended any such result.

We conclude that the document in question here evidences a complete termination of all of Reinecke's rights under the judgment sought to be enforced.

The remaining contentions of Reinecke are readily disposed of. His counsel contend that "the court below was in error when it ruled 'that if there was any fraud practiced in the settlement of said claim on the plaintiff that said settlement can only be set aside by direct action and not in proceedings of this character.'"

But the trial judge made no such ruling. On the contrary, while expressing the view that "said settlement can only be set aside by direct action and not in proceedings of this character", the court added that it

would "refer the exceptions to the merits in order that the matter may be before the Court of Appeal". The court then heard the case in full and all of the evidence tendered was admitted and is included in the record which is before us.

That the trial court gave no reasons for the granting of the preliminary restraining order without notice in spite of the requirement of section 2 of Act No. 29 of 1924 cannot be urged as a reason for reversing the judgment. The act requires that every such restraining order, among other things, "shall state why the order was granted without notice". This we interpret as an instruction to the trial judge and not as placing upon the petitioner for the restraining order any duty of requiring the judge to give such reasons. Surely, where the restraining order has lost its effect by a trial on the merits and a judgment granting a permanent injunction has been rendered, it can no longer be contended that the entire proceeding is null and should be set aside because, in the preliminary steps of the litigation, the trial court failed to give reasons for the granting of the restraining order.

The judgment appealed from is affirmed at the cost of appellant.

Affirmed.