568 So.2d 216 (1990)
AMERICAN BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
Edward J. HANNIE, Defendant-Appellant.
No. 89-463.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Writ Denied January 4, 1991.
*217 Andrus & Doherty, James P. Doherty, Jr., Opelousas, for plaintiff-appellee.
Mangham, Hardy, Rolfs & Abadie, Douglas F. Pedigo, Lafayette, for defendant-appellant.
Before DOUCET, YELVERTON and KING, JJ.
KING, Judge.
This appeal presents the issue of whether the trial court erred in holding defendant liable on a promissory note and in recognizing a collateral mortgage pledged to secure the note.
American Bank & Trust Company (hereinafter plaintiff) filed suit on a promissory note against Edward J. Hannie (hereinafter defendant) to collect the balance owed of $10,922.11, together with interest, attorney's fees, and court costs, and also seeking recognition of a collateral mortgage against defendant's property given as security for the note. Defendant denied liability for the debt and urged the affirmative defenses of payment, accord and satisfaction, transaction and compromise, novation, and equitable estoppel. After a trial, the trial court rejected defendant's defenses and found defendant liable for the balance owed on the promissory note and recognized and maintained the collateral mortgage. A formal written judgment was signed. Defendant timely appealed. We affirm.

FACTS
On March 31, 1982, plaintiff made a loan of $70,000.00 to defendant, Daniel V. Hiatt, and E. Kenneth Wall, all of whom personally signed as makers a promissory note (hereinafter the note) given to evidence the loan. The note was a demand note payable to plaintiff and secured by the pledge of defendants' $200,000.00 collateral mortgage note which was secured by a collateral mortgage on defendant's property. Several years later, Wall was discharged in bankruptcy, leaving defendant and Hiatt still solidarily liable on the note as the remaining obligors. In April, 1986, with the note in default, the plaintiff, through its Vice-President, Ronald J. Lashute, defendant, and Hiatt had discussions regarding the payment of the note which was past due. The note, at that time, had a balance owing of $34,510.65. The agreement between the parties was not reduced to writing, but there are various memoranda and correspondence reflecting their discussions.
On April 29, 1986, Lashute sent the following memorandum to the Loan Officers Review Committee of plaintiff:
"Dan Hiatt and Dr. Ed Hannie presently owe the bank $34,510.65 principal and interest. This loan has been past due since July 1, 1985. In order to repay the loan, Dr. Hannie has said he would pay half of the debt owed and Dan Hiatt would pay $10,000 and would need to have the bank finance the remaining $7,000 on a two year payout. The loan for $7,000 would be in the name of Dan Hiatt and Dr. Hannie would be released of any further obligations to the bank."
On May 1, 1986, a proposed new loan to Hiatt in the amount of $7,000.00 was approved by the loan officers committee of plaintiff; however, this proposed loan was never actually made to Hiatt and Hiatt never signed a note to plaintiff for that amount.
On June 6, 1986, defendant sent the following letter to plaintiff:
 "Mr. Ronald J. Lashute
 Vice President
 American Bank & Trust Company
 P.O. Box 1579
*218
Opelousas, LA 70571
 Re: Note, Final payment
Dear Ronnie:
As per our conversation this morning, I am sending you my one-half share of the note balance of $35,029.96 which amounts to $17,514.98. When you receive this check and it has cleared my bank, I will be released of any notes or obligations to the American Bank & Trust Company of Opelousas, La. and Dan Hiatt will be responsible for his one-half share of the note.
I would appreciate your sending me a letter from your bank relieving me of any notes or obligations.
 Sincerely,
 /s/ Edward J. Hannie, D.D.S.
 Edward J. Hannie, D.D.S."
Enclosed with this letter was defendant's check for $17,514.98 made payable to plaintiff. Written on the bottom left hand corner of the check was the notation "Final payment of note." The plaintiff never responded to defendant's letter, but cashed the check.
There were no further communications between plaintiff and defendant concerning the note until July 15, 1987, when plaintiff sent the following letter to defendant:
 "Dr. Edward Hannie
 823 E. St. Mary Blvd.
 Lafayette, La. 70503
 Re: Loan on Daniel Hiatt, Edward
 Hannie, Ken Wall
 Loan # XXXXXXX-XX
Dear Dr. Hannie:
The above loan has been due since July 1, 1985. Last year on June 9, 1986 you paid to the bank $17,514.98 which left a principal balance on the loan of $17,514.98. Daniel Hiatt has been paying on the loan since that time and reduced the loan to its present balance of $10,922.11. This loan was to be renegotiated in Mr. Hiatt's name when the balance was paid down to $7,000.00. The bank has been informed by Mr. Hiatt that he is filing bankruptcy and will no longer be paying on the loan.
Since you are a co-borrower on the loan with Mr. Hiatt, the bank is demanding payment from you on the balance of the loan plus interest. Please contact me 5 days from receipt of this letter in order that arrangements for repayment can be made.
 Sincerely,
 /s/Ronald J. Lashute
 Ronald J. Lashute
 Vice President"
Defendant refused to pay and this suit was then filed. Defendant answered, denying liability and setting forth affirmative defenses. The plaintiff contends that the agreement with defendant was that defendant would pay one-half of the debt and that Hiatt would pay plaintiff $10,000.00 to pay the note down to $7,000.00, at which time a new loan would then be made to Hiatt for $7,000.00 and only at that time would defendant be released of his liability on the note. Defendant, on the other hand, contends that the agreement was that he was to pay one-half of the note and Hiatt was to pay one-half of the note, and that he was to be released upon his only paying his one-half of the note.
The defendant pled the affirmative defenses of payment, accord and satisfaction, transaction and compromise, novation, and equitable estoppel. In its written reasons for judgment, the trial court found that there had been no payment of the entire amount owed, no novation, no accord and satisfaction, because there was no disputed or unliquidated claim, and that there had been no transaction and compromise. The trial judge then rendered judgment in favor of plaintiff and against defendant on the note in the amount prayed for and recognized and maintained the collateral mortgage on defendant's property given as security for the note.

LAW
Defendant first argues that there was an accord and satisfaction when the plaintiff cashed his check with the notation "Final payment of note" written on it. In order to successfully maintain a defense based on accord and satisfaction there *219 must be (1) an unliquidated or disputed claim, (2) a tender by the debtor, and (3) an acceptance of the tender by the creditor. Pontchartrain Park Homes v. Sewerage & Water Bd., 246 La. 893, 168 So.2d 595 (1964); McClelland v. Security Indus. Ins. Co., 426 So.2d 665 (La.App. 1 Cir.1982), writ den., 430 So.2d 94 (La.1983); Charles X. Miller, Inc. v. Oak Builders, Inc., 306 So.2d 449 (La.App. 4 Cir.1975); Davis-Wood Lumber Co. v. Farnsworth & Co., 171 So. 622 (La.App.Orl.Cir.1937). In this case, there is no disputed or unliquidated claim.
In his letter of June 6, 1986, defendant stated that he was sending his "one-half share of the note balance of $35,029.96 which amounts to $17,514.98." Defendant never disputed the amount owed or that he was solidarily liable for the note in its entirety. Rather, it is his contention that the plaintiff simply agreed to release him upon his payment of one-half of the balance owed as the note. Whether this was, in fact, the agreement is what has caused this dispute. There was no dispute as to the amount that was owed on the note or of the defendant's solidary liability on the note. Even though the notation "Final payment on note" was on the check and even though defendant's letter stated that his check was tendered as his one-half share of the balance owed, if there was no dispute over the total amount due, no accord and satisfaction could occur, since accord and satisfaction can only occur where a payment is accepted after a dispute as to the correct amount owed. Peter A. Chopin, Inc. v. D'Antoni, 123 So.2d 669 (La. App. 4 Cir.1960). See also, Reinecke v. Pelham, 199 So. 521, 523 (La.App.Orl.Cir. 1941).
Next, defendant argues that there was a transaction or compromise. La.C.C.Art. 3071 states:
"A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form."
Even if defendant and plaintiff entered into an agreement "for preventing or putting an end to a lawsuit," which is not at all clear from the facts since there was no real "dispute," the agreement was not reduced into writing or recited in open court. The writing required by La.C.C. Art. 3071 does not have to be a formal writing, see Audubon Ins. Co. v. Farr, 453 So.2d 232 (La. 1984); however, there must be some kind of writing. Defendant's letter setting forth his understanding of the agreement is not an agreement of the parties reduced into writing. Compromise is a bilateral contract. La.C.C. Art. 3071; Bielkiewicz, et al, v. Rudisill, et al, 201 So.2d 136 (La.App. 3 Cir.1967). Furthermore, the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties. Felder v. Georgia Pacific Corp., 405 So.2d 521 (La.1981); Singleton v. Bunge Corp., 364 So.2d 1321 (La.App. 4 Cir.1978). In order to have a compromise, there must be a meeting of the minds. Succ. of Magnani, 450 So.2d 972 (La.App. 2 Cir.1984). What the agreement was between plaintiff and defendant is disputed. This kind of dispute is precisely what a writing or recitation in open court between the parties, setting forth the exact terms of a transaction or compromise, is meant to avoid and why the law requires this before there can be a transaction or compromise.
Defendant also argues that there was a novation. "Novation is the extinguishment of an existing obligation by the substitution of a new one." La.C.C. Art. 1879. The parties to the note may have intended that a novation would occur when *220 Hiatt paid the note down to $7,000.00, and refinanced the balance with a new note; nevertheless, from the facts of this case, it is clear that a novation never occurred. The existing obligation of the note was never extinguished by the substitution of a new obligation as Hiatt never paid the note down to $7,000.00 nor signed a new note to pay off the balance owed on the note.
Lastly, defendant contends he is entitled to relief based on the doctrine of equitable estoppel. Estoppel is not favored in Louisiana law. As the Supreme Court stated in Howard Trucking Co., Inc. v. Stassi, 485 So.2d 915 (La.1986), cert. den., 479 U.S. 948, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986):
"`Estoppel' in its various forms seems to be a doctrine of last resort. In Louisiana, no statutory material and no body of jurisprudence justifies its use. In this court we have discussed it, in modern times, only to disallow a claim that the opponent ought not to be able to make a certain claim or defense. John Bailey Contractor, Inc. v. State, 439 So.2d 1055 (La.1983); Welch v. Crown Zellerbach Corp., [359 So.2d 154 (La.1978)] supra; State v. Mitchell, 337 So.2d 1186 (La. 1976); Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975)." Howard Trucking Co., Inc. v. Stassi, 485 So.2d 915, at page 918 (La.1986), cert. den., 479 U.S. 948, 107 S.Ct. 432 [93 L.Ed.2d 382] (1986).
Nevertheless, when estoppel is appropriate, the elements required for its application are (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance on such representation. John Bailey Contr. v. St., Dept. of Tr. & Dev., 439 So.2d 1055 (La. 1983).
Even if we consider the plaintiff's silence upon receipt of defendant's June 6, 1986 letter to be a representation, the defendant was not justified in his reliance on such representation. Defendant's letter stated: "I would appreciate your sending me a letter from your bank relieving me of any notes or obligations." Defendant never received any such letter from plaintiff, nor did he contact plaintiff regarding his release or to confirm his release after sending his letter dated June 6, 1986. Furthermore, even if defendant was justified in his reliance on the plaintiffs silence, he did not change his position to his detriment since defendant was already solidarily liable on the note for payment of any balance owed.
On appeal, defendant also questions the validity of the pledge of the collateral mortgage note to secure the note owed to plaintiff. Defendant contends that the act of pledge of the collateral mortgage note and the collateral mortgage itself, both of which were filed in evidence, do not secure the note sued on because the note was made and owed by defendant and Hiatt, whereas the collateral pledge agreement of the collateral mortgage note and the collateral mortgage itself, by their terms, only secure loans made to Crescent Oaks Health Care Center and certain other individuals, none of whom were Hiatt.
The collateral pledge agreement of the collateral mortgage note states that it was given to secure loans made by plaintiff and reads in part:
"CRESCENT OAKS HEALTH CARE CENTER, a Louisiana Partnership (`Partnership'), represented herein by Gordon Dione, Edward J. Hannie, and E. Kenneth Wall, its General Partners; Edward J. Hannie, E. Kenneth Wall, and Gordon Dione, (`Individually'); and Jeannette Deraney Hannie, (`Intervenor');

who acknowledged that the Partnership and the Individuals are, and/or shall be, indebted unto American Bank and Trust Company, Opelousas, Louisiana (`Bank') in a principal sum not to exceed TWO MILLION AND 00/100 ($2,000,000.00) Dollars, by reason of credit or advances which have been made and/or shall be made in the future to the said Partnership, or to the said Individuals, or to the Partnership and said Individuals together." (Emphasis supplied.)
The collateral mortgage itself states that:
"The said Mortgagors (defendant and his wife) further declared that this Collateral *221 Mortgage shall secure payment of funds owed by Crescent Oaks Health Center, or the said Individuals (defendant and his wife), whether solely or in conjunction ..." (Emphasis supplied.)
This collateral mortgage pledge agreement and the collateral mortgage itself, by their very terms, secure any debt of defendant owed to plaintiff. Defendant is liable for the balance owed on the note and, therefore, the trial judge was correct in recognizing and maintaining the pledge of defendant's collateral mortgage note, secured by a collateral mortgage on defendant's property, given by defendant as security for the note he signed as a maker even though the note was signed by other makers.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to defendant-appellant.
AFFIRMED.