# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-655**

J'ME DECKER

VERSUS

COX COMMUNICATIONS LOUISIANA, LLC

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 07-01308
SHARON MORROW, WORKERS' COMPENSATION JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Elizabeth A. Pickett, J. David Painter, and James T. Genovese, Judges.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Richard B. Eason II
Raymond P. Ward
Adams and Reese LLP
4500 One Shell Square
701 Poydras Street
New Orleans, Louisiana 70139
(504) 581-3234
COUNSEL FOR DEFENDANT/APPELLANT:
    Cox Communications Louisiana, LLC

Harry K. Burdette
300 Stewart Street
Lafayette, Louisiana 70501
(337) 233-1471
COUNSEL FOR PLAINTIFF/APPELLEE:
    J'Me Decker

**GENOVESE, Judge.**

In this workers' compensation case, both the Claimant, J'Me Decker, and the Employer, Cox Communications Louisiana, LLC (Cox), appeal the workers' compensation judgment. Mr. Decker has also answered Cox's appeal. For the following reasons, we affirm in part, reverse in part, and remand.

## STATEMENT OF THE CASE

Mr. Decker injured his back on January 26, 2003, during the course and scope of his employment with Cox. As a result thereof, Mr. Decker and Cox entered into a settlement agreement in March of 2006. In addition to paying Mr. Decker $26,000.00, the settlement also provided that Cox agreed to:

> [pay for Mr. Decker's] future medical treatments including surgery limited to [his] complaints of low back pain that are related to the accident of January 26, 2003, for one year from the date of settlement, in full and final settlement, satisfaction[,] and compromise of any and all issues raised by [Mr. Decker] in this matter . . . and any and all claims that may arise out of his employment at Cox.

An order approving the settlement between Mr. Decker and Cox was signed by the workers' compensation judge (WCJ) on April 26, 2006.

Mr. Decker was scheduled to have an anterior lumbar diskectomy with the application of an artificial disc at the L5-S1 level by Dr. Jorge Isaza on September 14, 2006; however, after being intubated, Mr. Decker began having respiratory difficulty. The surgery was cancelled, and Dr. Isaza advised him to get clearance from a pulmonologist before attempting further surgery.

On February 16, 2007, Mr. Decker filed a disputed claim for compensation, commonly referred to as a 1008, wherein he asserted that Cox "has failed to provide medical benefits in accordance with the full and final settlement of March, 2006.

1

Claimant requests penalties and attorney fees in accordance with La.R.S. 23:1201([G]).”

Cox answered Mr. Decker's claim and asserted that “[u]nder the settlement agreement, [Mr.] Decker had one year from the date of the settlement for additional medical treatment to his back, including surgery. The year has expired. The plaintiff's claim is moot.”

Mr. Decker filed an amended 1008 on July 13, 2007, asserting that Cox had “failed to approve a change in treating orthopedic surgeon due to claimant[']s treating orthopedic surgeon[’s], Dr. Jorge Isaza[’s], refusal to perform surgery and further treat claimant” and had “failed to approve any further medical treatment in accordance with the settlement of March 2006 in violation of La.R.S. 23:1201(G)[.]” Mr. Decker also requested penalties and attorney fees “for each and every act[.]”

On July 18, 2007, Cox filed a Peremptory Exception of Res Judicata And Alternative Motion for Summary Judgment. In its memorandum in support of its peremptory exception, Cox argued that Mr. Decker was “estopped by the doctrine of res judicata from bringing any claim against Cox that was adjudged in the settlement agreement.” Cox also asserted that Mr. Decker “has not alleged or presented evidence that he submitted any bills to Cox from April 26, 2006[,] to the date of his claim for compensation on February 16, 2007 that were not paid.” Alternatively, in support of its motion for summary judgment, Cox asserted that Mr. Decker “has neither alleged that the compromise was invalid nor that the settlement agreement does not reflect the intent of the parties.” According to the minutes of the trial court, the peremptory exception and motion for summary judgment filed by Cox were heard and both were denied on December 11, 2007.

Trial was held in this matter on January 20, 2009. At trial, Cox argued that Mr. Decker did little or nothing to obtain the necessary medical care required after his surgery in September of 2006 was cancelled due to the respiratory complications he suffered while on the operating table. According to Cox, Mr. Decker was instructed by Dr. Isaza to obtain clearance from a pulmonologist before Dr. Isaza would reattempt the surgery.

Mr. Decker asserted that he attempted to obtain authorization from Cox's attorney, Mr. Richard Eason, on January 13, 2007, to change treating orthopedic surgeons. According to Mr. Decker, his treating orthopedic surgeon, Dr. Isaza, became unwilling to perform his back surgery after Mr. Decker's surgery in September of 2006 was cancelled due to the respiratory complications he suffered while on the operating table. Mr. Decker argues that he filed a 1008 in February, 2007, after not receiving a response to his request from Mr. Eason.

Counsel for Cox, Mr. Eason, also argued at trial that Mr. Decker's attempt to obtain authorization to change treating orthopedic surgeons was misdirected. According to Mr. Eason, he was unaware of Mr. Decker's effort to change physicians. Mr. Eason further argued that Mr. Decker knew that the proper representative that he needed to contact was Connie Freese, employed by the third-party administrator for Cox, with whom Mr. Decker had always dealt. However, according to Mr. Eason, Mr. Decker never made any attempt to contact Ms. Freese about changing his treating physician.

Following the trial, the WCJ issued her oral ruling, as follows, in pertinent part:

> From my viewpoint, the issue comes down to the choice of physician issue. We had a one-year period that the medical was left open for. I think all parties would agree; although, what happened in this case

3

wasn't specifically or necessarily foreseeable. I think at the time of settlement it was foreseeable that there could be some disputes about the medical that was opened for a year. There did arise a dispute as to the request for change of physician, and the filing of the claim in connection with that request is what I see as the central issue here.

I have to say that while I understand where Mr. Decker was coming from, at the same time -- with the argument that Dr. Isaza became spooked. At the same time, I have to say that when a patient nearly dies on the operating table, I do believe in my non-expert opinion, that a physician would become more cautious in his overview of the necessary treatment knowing that there is a possibility that a particular patient may die during the surgery. I think it was prudent from Dr. Isaza's standpoint to take the positions that he did, in other words. And I'm saying this in my own words, and this is what I believe the evidence reflects: That all of a sudden because of the near death of the patient on the operating table, the circumstances where changed; and there should be a greater necessity -- obviously, that's not a term of art or referring to necessity under the law, but the circumstances should be more dramatic to go forward with the surgery. So, while I understand Mr. Decker's not understanding Dr. Isaza's modification in position, I do not find that it is cause for a change of physician, at least on what I have before me. I think that when you come down to it and the fact that the patient nearly dies on the operating table, the doctors [sic] should be more cautious in going forward with the surgery. So, I'm denying [Mr. Decker's] request for change of physician.

However, I do believe that Mr. Decker and his counsel did not rush to meet Dr. Isaza's requirements because the claim had been made for the change of physician, and it needed to be addressed by the [c]ourt. So I am, in effect, finding that the request for change of physician suspended the period. While I'm not allowing a change of physician, I do give Mr. Decker an additional period of time from the finality of this ruling to extend [the] period for a certain time frame.

. . . .

I'm going to give it from the date of demand, January 13th, simply because it's going to take the -- I mean we're talking a month which in the big picture is a short period of time. But, under the facts of this case could make a lot of difference. I think the initial settlement contemplated that the surgery would take place. I don't think anyone had any idea that what happened would happen. So, I do feel that Mr. Decker should have the opportunity to see if he can have the surgery done with Dr. Isaza, and I think six weeks is - six, seven weeks is insufficient time. So to give him whatever benefits that I'm able to under the circumstances, I will start the suspension from the date of demand of January 13, 2007.

4

A judgment was signed on March 3, 2009, wherein Mr. Decker's request for a change of physician, penalties, and attorney fees was denied; however, Mr. Decker was granted:

> [A]n additional period of one hundred three (103) days for future medical treatments with Dr. Jorge Isaza including surgery by Dr. Jorge Isaza limited to his complains of low back pain that are related to the accident of January 26, 2003. This period begins on the date of the execution of this judgment.

Cox filed a suspensive appeal. Mr. Decker also appealed and filed an answer to the appeal lodged by Cox.

## ASSIGNMENTS OF ERROR

In its sole assignment of error, Cox argues that "[t]he [WCJ] erred in modifying the April 26, 2006 settlement to make Cox responsible for 103 days[] additional medical care related to [Mr.] Decker's lower back." In its brief, Cox contends that the WCJ erroneously modified the workers' compensation settlement where there was no showing of either fraud or misrepresentation as mandated by La.R.S. 23:1272(B).[1]

In his sole assignment of error, Mr. Decker argues that the WCJ "committed manifest error and was clearly wrong by disallowing a change of [his] choice of orthopedic surgeon." Additionally, in his answer to the appeal lodged by Cox, Mr. Decker requests: (1) "additional attorney fees, costs and all damages allowed by law

---

[1]Louisiana Revised Statutes 23:1272(B) provides:

> When the employee or his dependent is represented by counsel, and if attached to the petition presented to the workers' compensation judge are affidavits of the employee or his dependent and of his counsel certifying each one of the following items: (1) the attorney has explained the rights of the employee or dependent and the consequences of the settlement to him; and, (2) that such employee or dependent understands his rights and the consequences of entering into the settlement, then the workers' compensation judge shall approve the settlement by order, and the order shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party.

5

for answering and defending this appeal"; (2) "that all issues decided favorable to [him] be affirmed"; and (3) "an increase in all damages, costs[,] and interest[.]"

## LAW AND DISCUSSION

In *Boykin v. PPG Industries, Inc.*, 08-117, pp. 4-5 (La.App. 3 Cir. 6/16/08), 987 So.2d 838, 842, *writs denied*, 08-1635, 08-1640 (La. 10/31/08), 994 So.2d 537, this court set forth the applicable standard of review:

> Questions of contractual interpretation are questions of law which are subject to a *de novo* standard of review. *Mitchell v. Patterson Ins. Co.*, 00-612 (La.App. 3 Cir. 12/6/00), 774 So.2d 366. Contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties. La.Civ.Code arts. 1983 and 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La.Civ.Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. Whether or not a contract is ambiguous is a question of law. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La.1/14/94), 630 So.2d 759. These general rules that govern the interpretation of most contracts apply to contracts of indemnity. *Soverign Ins. Co. v. Tex. Pipe Line Co.*, 488 So.2d 982 (La.1986).

Also instructive to our review of this matter is *Rogers v. Mumford*, 08-1144, p. 3 (La.App. 3 Cir. 2/4/09), 6 So.3d 848, 850:

> "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La.Civ.Code art. 3071. "Such a compromise is valid only if the parties share a meeting of the minds as to their intent." *Amy v. Schlumberger Technology Corp.*, 00-175, p. 4 (La.App. 3 Cir. 6/14/00), 771 So.2d 669, 672 (citing *Am. Bank & Trust Co. v. Hannie*, 568 So.2d 216 (La.App. 3 Cir.1990), *writ denied*, 572 So.2d 64 (La.1991)).

### *Appeal by Mr. Decker*

In brief, Mr. Decker alleges that he "tried to have the surgery rescheduled but was informed that Dr. Isaza no longer wanted to perform the surgery." Thereafter,

Mr. Decker submitted a request to Cox that he be allowed to see a different orthopedic surgeon. According to Mr. Decker, he filed the 1008 at issue herein when "[t]his request went completely unacknowledged[.]" On appeal, Mr. Decker contends that the WCJ erred in failing to order that a change of physician was warranted under these specific circumstances.

Cox argues that Mr. Decker's assertion that "Dr. Isaza no longer wanted to perform the surgery" was "contrary to the record." According to Cox, Dr. Isaza never refused to perform Mr. Decker's surgery; instead, Dr. Isaza merely insisted that he would not reschedule the operation until he had clearance from a pulmonologist that Mr. Decker was a candidate for surgery.

The record reveals that at Mr. Decker's post-surgical follow-up visit with Dr. Isaza on October 4, 2006,[2] Dr. Isaza's medical notes state "I would not recommend for [Mr. Decker] to return to surgery unless his pain is miserable." We find that this notation corroborates Mr. Decker's contention that Dr. Isaza was unwilling to reschedule his surgery. We consider Dr. Isaza's position that Mr. Decker needed to be "miserable" before he would operate a sufficient basis to afford Mr. Decker the right to seek treatment/surgery with a different physician. Therefore, we find that the WCJ clearly erred when she denied Mr. Decker's request to change physicians.

***Appeal by Cox***

In brief, Cox argues that "[u]nder La.R.S. 23:1272(B)(1), a settlement may not be modified except for fraud or misrepresentation made by any party." Therefore, Cox contends that the WCJ erred when she granted to Mr. Decker an additional 103 days of medical treatment at the expense of Cox in the "absence of any showing

---

[2]The record indicates that Mr. Decker had only one appointment with Dr. Isaza between the time of his surgery, September 14, 2006, and his filing of his disputed claim on February 16, 2007.

7

(much less a finding) of fraud or misrepresentation."

Mr. Decker counters by arguing that because his request to change physicians was "ignored by [Cox,]" he filed the 1008 at issue herein "before the one-year period" set forth in the settlement agreement expired in April of 2007. Therefore, Mr. Decker argues that said "[d]isputed [c]laim interrupted the one year period."

Based upon the record before us, we do not find that the WCJ was manifestly erroneous or clearly wrong in its factual findings on the issue of whether to extend the time period within which Mr. Decker had to undergo back surgery. Based upon Dr. Isaza's position that he "would not recommend for [Mr. Decker] to return to surgery unless his pain is miserable[,]" we find that Mr. Decker was justified in his belief that Dr. Isaza was unwilling to reschedule his surgery. We consider Cox's refusal to grant Mr. Decker's request to change physicians a breach of the settlement agreement; therefore, the WCJ was legally correct in granting Mr. Decker additional time to receive the medical treatment contemplated by the settlement agreement.

Considering the foregoing, and in an effort to assure that Mr. Decker obtains his necessary medical treatment, this court orders that Mr. Decker shall have a maximum of 103 days from the issuance of this court's ruling to undergo back surgery by a physician of his choice. However, this authorization for change of physician shall in no way extend or affect the expiration of Mr. Decker's 103-day window which closes 103 days from the issuance of this court's ruling.

***Mr. Decker's Answer to Appeal***

This court has not considered the generalized requests listed in Mr. Decker's answer to appeal, i.e., "additional attorney fees,[3] costs[,] and all damages allowed by

---

[3]Noteworthy is the fact that the March 3, 2009 judgment did not award Mr. Decker attorney fees.

8

law for answering and defending this appeal[]" as well as "an increase in all damages, costs[,] and interest[.]" Mr. Decker failed to brief these assignments of error; instead, his brief contains only an argument relative to the issue of whether the WCJ's denial of his request to change physicians was proper. Therefore, because Mr. Decker did nothing more than specify these requests without submitting a memorandum, citing any authority, or making any argument in favor thereof, we consider Mr. Decker's requests specified in his answer to the appeal lodged by Cox to be, in effect, abandoned. See Uniform Rules—Courts of Appeal, Rule 2–12.4.[4]

## DECREE

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed in part, reversed in part, and remanded. All costs of this appeal are assessed to the Employer/Appellant, Cox Communications Louisiana, L.L.C.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[4]Uniform Rules—Courts of Appeal, Rule 2–12.4 provides, in pertinent part, "[a]ll specifications . . . must be briefed. This court may consider as abandoned any specification . . . which has not been briefed."