[Civ. No. 12886. Second Dist., Div. Three. May 8, 1942.]

LOUIS A. SCHWARTZ, Appellant, v. CALIFORNIA CLAIM SERVICE, LTD. (a Corporation) et al., Respondents.

Zuckerman & Stein, Edward K. Zuckerman and Arthur Edmund Stein for Appellant.

Samuel C. Cohn for Respondents.

SHINN, J.—Plaintiff appeals from a judgment on the pleadings in favor of defendants. The complaint contained three causes of action. The first, which was to quiet title to real property, was dismissed by plaintiff upon the trial. The ruling was upon the second and third causes of action, and the question is whether either one of them stated sufficient facts to support a judgment of the superior court in plaintiff's favor.

In the second cause of action it was alleged that defendant California Claim Service, Ltd. held a judgment against plaintiff, rendered in the municipal court, for the sum of $147.45; that plaintiff in writing offered the judgment creditor $15 in full settlement of the judgment, which offer was accepted, and that pursuant thereto plaintiff paid the judgment creditor $15 and received a written satisfaction of the judgment, signed by an attorney purporting to act for the client; that thereafter defendants caused an execution to be issued on the judgment, caused it to be levied upon plaintiff's bank account in the amount of $226.80, which was paid over to the marshal, and that the latter refuses after demand to pay the same to plaintiff. It was not alleged what, if any, interest the defendants, other than the judgment creditor, had in the judgment or what their motives were in causing the execution proceedings.

The third cause of action alleged the foregoing facts and in addition thereto that the defendants caused said execution to be issued and levied wrongfully and maliciously, and maliciously refused to satisfy the judgment and allowed the same to remain as a lien against plaintiff's real property; that by reason thereof plaintiff has been injured through "loss of good will, credit and business, to Plaintiff's damage in the sum of $500.00," and an additional $50 "for title, escrow and other otherwise unnecessary expenses caused to Plaintiff by said acts of Defendants in the obtaining of title to the property described in Plaintiff's first cause of action." It was also alleged that defendants' acts were done deliberately, knowingly, wilfully, wrongfully and maliciously and that plaintiff was therefore entitled to punitive damages of $5,000. The prayer of the complaint (excluding the first cause of action) was (1) that the municipal court judgment be declared satisfied and the writ of execution be declared null and void and be ordered returned; (2) that the defendant marshal of the municipal court be ordered to pay plaintiff the sum of $226.80; (3) "for damages against the Defendants, and each

of them, with the exception of the Defendant, FRANK R. HOLT, Marshal of the Municipal Court of the City of Los Angeles, County of Los Angeles, State of California in the sum of $500.00 for loss of good will, credit and business''; (4) ''For damages against the Defendants, and each of them, with the exception of the Defendant, FRANK R. HOLT, Marshal of the Municipal Court of the City of Los Angeles, County of Los Angeles in the sum of $50.00 for title and escrow expenses''; (5) ''For damages against the Defendants, and each of them, with the exception of the Defendant, FRANK R. HOLT, Marshal of the Municipal Court of the City of Los Angeles, County of Los Angeles in the sum of seven per cent. (7%) per annum on the sum of $226.80 from October 14, 1939 until said sum is released from levy of execution''; and (6) ''For damages against the Defendants, and each of them, with the exception of the Defendant, FRANK R. HOLT, Marshal of the Municipal Court of the City of Los Angeles, County of Los Angeles in the sum of $5,000.00 for punitive damages.''

The second cause of action (standing alone) did not state a case triable in the superior court. Viewed as an action at law for the recovery of $226.80 from the defendant marshal, or for the recovery of damages from defendants in that amount, the demand was one of which the municipal court had exclusive jurisdiction. (Code Civ. Proc., § 89.)

If by the second cause of action it was attempted to allege a case calling for equitable relief, the facts stated were insufficient. If the judgment had been satisfied by executed agreement and the execution for that reason had been erroneously or wrongfully issued, plaintiff (the judgment debtor in the municipal court action) had a right to apply by motion in the municipal court for an order directing satisfaction of the judgment of record. (Code Civ. Proc., § 675.) He could not go directly into a court of equity to obtain relief which was available to him through a legal remedy that was plain, speedy, and adequate. (See cases collected in 10 Cal. Jur. 465, et seq.)

We do not know why the trial court held the third cause of action to be insufficient but we feel reasonably certain that it could not have been upon any of the grounds relied upon by respondent for affirmance of the judgment. They will be readily seen to be insufficient.

It is contended that the agreement to compromise the judgment was void. Reliance is placed upon section 283, sub-

division (2) of the Code of Civil Procedure, which provides in substance that a judgment creditor's attorney may not acknowledge satisfaction of a judgment except upon payment thereof. The allegation of the complaint was that the agreement was with the judgment creditor and that the latter received and retained the amount offered in satisfaction, so the argument based upon the code section is without merit.

Another point is that since only the judgment creditor or its attorney could have given instructions to the marshal, and the other defendants were "strangers to the action," no cause of action was stated against them. If, as alleged, those defendants knowingly and maliciously participated in the acts charged, their liability for the tort would be the same as that of the judgment creditor, California Claim Service, Ltd.

Another proposition relied upon is stated in respondent's brief as follows: "The third cause of action is fatal in that it does not allege that a judgment was rendered in plaintiff-appellant's favor in the action in which said unlawful levy was made. (3 Cal. Jur. 554, § 126)," etc. The rule referred to has application to actions for malicious attachments and the cases cited in support thereof are not in point. The instant case relates exclusively to the issuance and levy of an execution.

The next point is that "impairment of plaintiff's credit is not proximate but a remote consequence of the attachment" (sic). This objection, of course, does not go to the sufficiency of the complaint as a whole.

Since the judgment is to be reversed we should consider certain other matters which may have influenced the trial court or which may arise in future proceedings. It occurs to us that the ruling of the court may have been based upon either or both of the following grounds: first, that the agreement to satisfy the judgment for less than its total amount was without consideration to the judgment creditor and was therefore void, under the rule announced in *Deland* v. *Hiett* (1865), 27 Cal. 611 [87 Am. Dec. 102] ; or second, that the amount of the recovery under the third cause of action was insufficient to give the superior court jurisdiction because the amount of punitive damages asked, $5,000, should not be taken into account. We think the ruling cannot be supported for either of these reasons.

The rule followed in *Deland* v. *Hiett, supra,* is that a liquidated indebtedness presently due cannot be discharged by payment of less than the whole sum because a contract of

that nature is *nudum pactum*. The history of the rule, which had its origin in early English cases, is replete with opinions of learned judges condemning it for its want of logic, reason, and fairness and with specious reasons for restricting its application, until the so-called exceptions to the rule have been so numerous and varied as to raise a doubt whether they were not more often followed than the rule itself. (See article by Professor Ames in 12 Harvard Law Review, 524, and annotations to *Rye* v. *Phillips* (1938), 203 Minn. 567 [282 N. W. 459, 119 A. L. R. 1120] ; annotations to *Fuller* v. *Kemp* (1893), 138 N. Y. 231 [33 N. E. 1034, 20 L. R. A. 785] ; and annotations to *Jaffray* v. *Davis* (1891), 124 N. Y. 164 [26 N. E. 351, 11 L. R. A. 710].) The theory of *nudum pactum* which the courts finally accepted was a want of consideration passing to the creditor for acceptance of a part only of a liquidated demand in satisfaction of the whole.

This much disputed point of law was settled in favor of the validity of an accord and satisfaction based upon partial performance by the obligor by the adoption of section 1524 Civil Code, which reads as follows: ''Part performance of an obligation, either before or after a breach thereof, where expressly accepted by the creditor in writing, in satisfaction, or rendered in pursuance of an agreement in writing for that purpose, though without any new consideration, extinguishes the obligation.'' (See corresponding § 1541.) It is required that the obligee's acceptance be in writing, and this is in accord with a rule which has been followed in some jurisdictions that the primary rule has no application to a release under seal, which imports a consideration (*Harrison* v. *Close* (1807), 2 Johns. (N. Y.), 448, 3 Am. Dec. 444; *Foakes* v. *Beer* (1884), L. R. 9 App. Cas. 605; *Pinnel's Case* (1602), 5 Coke, 117a, 1 Eng. Rul. Cas. 370; 119 A. L. R. 1127), and this, of course, is true of a written instrument, under section 1614 Civil Code, which was adopted at the same time as the two sections mentioned. These code provisions dispense with the necessity for a new consideration and therefore render inapplicable the common law rule followed in *Deland* v. *Hiett*, *supra*.

The word ''obligation'' is defined in section 1427 Civil Code as follows : ''An obligation is a legal duty, by which a person is bound to do or not to do a certain thing.'' It is also defined in section 26 of the Code of Civil Procedure as follows : ''An obligation is a legal duty, by which one person is bound to do

or not to do a certain thing; and arises from: 1. Contract; or 2. Operation of law." Webster's International Dictionary defines the word "obligation" as follows: "A formal and binding agreement or acknowledgment of a liability to pay a certain sum or to do a certain thing." Black's Law Dictionary defines the word as ". . . that which constitutes a legal or moral duty and which renders a person liable to coercion and punishment for neglecting it . . ." Within the meaning of section 1524 Civil Code a judgment is an obligation. Of a judgment it was said in *Dunsmoor* v. *Furstenfeldt* (1891), 88 Cal. 522, 529 [26 Pac. 518, 22 Am. St. Rep. 331, 12 L. R. A. 508]: "Indeed, it was a debt in the strict legal sense,—a judgment,—a debt of record. (Burill's Law Dict.)" "Obligation" is a word of broad meaning and the particular meaning intended is to be gained by a consideration of its context. An obligation or debt may exist by reason of a judgment, as well as by reason of an express contract. In either case there is a legal duty on the part of the one bound to comply with a promise. In the case of an express contract the duty arises in the promise; in the case of an implied contract or a judgment the duty to fulfill the obligation is implied by law. The origin of a judgment may be either in contract, quasi contract, or in a liability imposed by law, but there is a legal duty on the part of the judgment debtor to pay it regardless of its origin. There is no reason to believe that the word "obligation" as used in section 1524 Civil Code was intended to have less than its broadest meaning, which would include the obligation of judgments, or to believe that it was intended to distinguish between judgments and liquidated claims which have not been reduced to judgment. Each one, where it relates to the payment of money, represents a legal duty to pay a definite sum in satisfaction of an obligation, and it would seem illogical to apply the principles of accord and satisfaction to liquidated claims without a new consideration and not to apply them to judgments upon the same terms. There is no inviolability in a judgment which should distinguish it as a subject of accord and satisfaction from liquidated demands that have not been reduced to judgment. The promise of one man to pay a sum of money may be better than a judgment against another and the collection of judgments frequently entails great delay, litigation and expense, not to mention the unpredictable amounts represented by judgments which are never paid at all. Had it not been for

the element of want of consideration, valid settlements and satisfactions of judgments and liquidated claims could have been made under the common law as freely and effectually as they were made of unliquidated or disputed claims, and the necessity for a new consideration having been removed by statute, full effect should be given to this declaration of new policy.

Section 1524 Civil Code does away with a rule which has long been regarded by the courts as supported by scarcely more than a superstition, and it gives recognition and validity to business practices that are of common occurrence. The satisfaction of judgments for less than their face value is of everyday occurrence, and since every such settlement represents an agreement mutually satisfactory to the parties and fraught with some benefit to each, it should not be the policy of the law to discourage such sensible arrangements under which a creditor can satisfy a judgment for what he thinks it is worth and a debtor can settle it for what he can afford to pay. A judgment debtor should not have to go into bankruptcy to rid himself of a judgment where he and his creditor are ready, able and willing to adjust and settle the debt. These are some of the considerations which the Legislature may well have had in mind in the enactment of sections 1524 and 1541 Civil Code and which support the meaning we have given to the word "obligation" as used therein.

The settlement alleged in the complaint was in writing, consisting of an offer of the debtor to pay $15 and the acceptance of that amount by the creditor and the endorsement of the check under the words:

"Endorsement of this check by Payee, acknowledges receipt in full for the following accounts:

Arthur Edmund Stein No. 1139
Attorney at Law
Richfield Building
555 South Flower Street

Description Amount Los Angeles, Cal. January 17, 1939

Full settlement Judgment
-vs- L. A. Schwartz, Mun.
Ct. No. 360257

Pay to the Order of California Claims Service, Ltd. $15.00
The Sum of $15 and 00cts Dollars
To the Union Bank & Trust Co.
 Los Angeles, Cal. ARTHUR EDMUND STEIN"

followed by the delivery to the attorney for the debtor of a written satisfaction of judgment executed by an attorney who, though apparently not the attorney of record in the case, no doubt executed the same under instructions of the judgment creditor. Sufficient facts were alleged in the third cause of action to constitute a valid accord and satisfaction of the judgment debt.

It may be argued that the case is not within the jurisdiction of the superior court for the reason that the recovery sought is in an amount insufficient to give the superior court jurisdiction. This would be true if the demand for $5,000 as exemplary damages should be disregarded. The demand for $50 as damage sustained through the payment of expenses in connection with plaintiff's title to real estate which were alleged to have been made necessary by the refusal to satisfy the judgment of record was one which would have been recoverable if sustained by the proof.

The alleged damage through loss of "good will, credit and business" was not recoverable as having proximately resulted from the levy of the execution (*Elder* v. *Kutner* (1893), 97 Cal. 490, 493 [32 Pac. 563]), although it might have been proved as a fact to be considered in connection with the claim for exemplary damages. (*Birch Ranch & Oil Co.* v. *Campbell* (1941), 43 Cal. App. (2d) 624, 628 [111 P. (2d) 445].) But these two items amounted to only $550, which was far below the $2,000 required to give the superior court jurisdiction. Unless the claim for exemplary damages is taken into consideration, the case belongs in the municipal court. In connection with the latter claim the question arises whether in a case where actual damages are alleged in a very small sum and there is in addition a prayer for punitive damages in an amount which brings the total demand to over $2,000, the court should give effect to the prayer for punitive damages in determining whether the case belongs in the superior court. While it would appear that we are viewing a small bird with an extraordinarily large tail, we think that the prayer for punitive damages of $5,000 must be regarded as an appendage of the demand of $50 as actual damages and that the complaint therefore stated sufficient facts to give the superior court jurisdiction. The rule is that jurisdiction depends upon the amount that is claimed in good faith, which implies that the court may disregard allegations of a pleading which have been made in obvious bad faith (*Becker* v. *Superior Court* (1907),

151 Cal. 313, 318 [90 Pac. 689]), but the single fact that a complaint may have a demand for exemplary damages in an amount which appears to the court to be out of all proportion to the gravity of the allegedly malicious acts of the defendants would not establish bad faith. Nevertheless it may properly be remarked that the puffing of a claim for exemplary damages for the sole purpose of getting the case into the superior court would be an unworthy act upon the part of an attorney which the court unquestionably would not tolerate if the motive were proven. (*Hartog* v. *Memory* (1886), 116 U. S. 588, 591 [6 S. Ct. 521, 29 L. Ed. 725, 726].)

In *Barry* v. *Edmunds* (1886), 116 U. S. 550 [6 S. Ct. 501, 29 L. Ed. 729], the court considered an appeal from a judgment of dismissal for want of jurisdiction to allege damage in the amount of not less than $500. The suit was for "a willful and malicious trespass, in seizing and taking personal property, with circumstances of aggravation and averments of special damage," which trespass was alleged to have consisted in part of the seizure of property worth less than $200 to enforce collection of a tax of less than $100. The complaint alleged in part, "That whilst the said defendant was unlawfully and wrongfully upon the plaintiff's premises, as aforesaid, he did many other wrongs and injuries to the plaintiff of a malicious nature, by all of which wrongs and injuries the plaintiff has been injured and damaged $6,000." After reviewing numerous authorities relating to exemplary damages and pointing out that such cases, as in other actions for tort where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount by their verdict, the court said (p. 734 L. Ed.): "In no case is it permissible for the court to substitute itself for the jury and compel a compliance on the part of the latter with its own view of the facts in evidence, as the standard and measure of that justice which the jury itself is the appointed constitutional tribunal to award." And it was further said (p. 734 L. Ed.): "There was clear error in the circuit court in its ruling, as matter of law, that there could be no lawful recovery, in such a case as that stated in the declaration, of an amount equal to that which is necessary to support the jurisdiction of the court." Upon the authority of this decision, especially as it is the only one we find on the point, the third cause of action in the complaint is to be considered as seeking a recovery of more than $2,000 so as to bring the case (as to both counts) within the

jurisdiction of the superior court. (*Emery* v. *Pacific Employers Ins. Co.* (1937), 8 Cal. (2d) 663, 666 [67 P. (2d) 1046].)

The judgment is reversed.

Schauer, P. J., and Wood (Parker) J., concurred.