William T. Cowin, J.
Defendant moves for multiple relief to vacate plaintiff’s judgment, to quash a subpoena served on defendant in an enforcement of money judgment proceeding, to vacate a restraining notice to garnishee served upon the Chemical Bank Hew York Trust Co. where defendant maintains an account and to dismiss plaintiff’s complaint pursuant to CPLR 3211 (subd. [a], par. 5) upon the ground of payment.
The complaint alleges that defendant, as a licensed broker, maintained an account with plaintiff and from time to time requested the issuance of policies of insurance on behalf of his clients. The premiums for the issued policies were collected by defendant, hut defendant failed to remit to plaintiff sums totaling $14,152.68. After the service of the summons and complaint and after defendant’s time to appear or answer had expired, defendant’s attorneys entered into an agreement of settlement of the action with plaintiff’s then attorney. The stipulation called for monthly installment payments of the entire amount claimed to be due, and provided if a payment *11 not be made after a five-day notice to defendant’s counsel, plaintiff may enter judgment.
On December 14, 1966, plaintiff’s then attorney wrote to defendant’s counsel giving notice of defendant’s default in the making of the payments and that judgment would be entered five days from date. As appears from the exhibits, defendant was then in arrears in five monthly payments totaling $2,500. On December 19, 1966, defendant sent a payment of $500 to plaintiff pursuant to a claimed understanding that his default would be waived and that henceforth his payments would be $250 “ every two weeks.” This alleged understanding was set forth by defendant’s counsel in a letter to plaintiff’s then attorney, but there was no confirmation of such understanding nor any expressed waiver of defendant’s default. On January 6, 1967, plaintiff improperly entered judgment on its attorney’s affidavit alleging that defendant was in default in answering (not in appearing) and had it entered on the “ Amount claimed in complaint * * * less payment made.” If plaintiff was entitled to enter judgment it should have done so on said stipulation of settlement. After entry of judgment, plaintiff as hereinafter indicated, pursued collection of the balance of defendant’s indebtedness. Plaintiff’s attorney sent a letter dated August 18, 1971 to defendant requesting payment of ‘1 Balance Due ’ ’ $5,626.57, even though he knew that defendant was represented by counsel. The nature and contents of this letter will be discussed later in this opinion. No mention was made in the letter of the judgment nor of any accrued interest thereon and it was only after defendant’s payment of the amount demanded in the letter that plaintiff now seeks interest on the judgment.
The issues here presented are:
1) Whether the judgment is valid under CPLR 3215 (subd. [h], par. 1);
2) Was there an accord and satisfaction!
3) May the court permit plaintiff to collect interest under the circumstances here presented!
The judgment as entered is irregular. The Clerk of the court was required as a ministerial act to enter judgment on the attorney’s affidavit alleging that the defendant was in default in answering. Although CPLR 3215 (subd. [h], par. 1) confers authority on the Clerk to enter a default judgment on a stipulation containing the words ‘1 without further notice,” nevertheless, the Clerk could have entered judgment under this stipulation which required the sending of a five-day *12 notice of default. The statutory inclusion of the words ‘ ‘ without further notice” is unfortunate and created confusion as to whether a Clerk’s power to enter a judgment by default was limited to only such stipulations as contained those statutory words. However, it has been held that a stipulation, as in the instant case, that requires the giving of a notice of nonpayment or default, the notice is deemed to refer only to “ some period of grace ” and not to the necessity of a formal notice of motion for leave to enter judgment (Star Office Supply Co. v. Galton, 56 Misc 2d 288). This form of stipulation of settlement providing for the action to remain in status quo until “ the complaint shall be dismissed with prejudice ” or a judgment is entered on defendant’s default does not terminate the action and is not to be confused with one that finally settles an action, compelling an attack thereon to be in the form of a plenary suit. See Goldstein v. Goldsmith (243 App. Div. 268, mot. for lv. to app. den. 266 N. Y. liv), which distinguishes between a settlement that is deemed a fixed and definite contract ending an action as described in Yonkers Fur Dressing Co. v. Royal Ins. Co. (247 N. Y. 435), and one as in the instant case that is no more than a stipulation “in the course of the action in which matters are left subject to the action of the court.” (Goldstein v. Goldsmith, supra, p. 271). This action and judgment are, therefore, still subject to this court’s jurisdiction with respect to the rights of defendant.
The fact that the judgment was irregularly entered is not of itself sufficient for this court to set it aside. The irregularity must be either of a jurisdictional nature or beyond the power of the Clerk to enter a default judgment or one that prejudices a substantial right. If a judgment could have been properly entered by the Clerk in the first instance but for the irregularity, the court must permit the judgment to stand and allow correction of the irregularity nunc pro tunc (Geer, Du Bois & Co. v. Scott & Sons Co., 25 A D 2d 423; Mortgage Comm. of State of N. Y. v. Bellucci, 161 Misc. 107; Schepps v. Mandarin of Long Beach, 145 N. Y. S. 2d 889; CPLR 5019, subd. [a]). In view of the decision of this court on the other issues, it is not necessary to pass on whether a substantial right of defendant has been prejudiced by the irregularity nor whether there was a waiver of defendant’s default and a voiding of the notice thereof when plaintiff accepted the $500 installment payment.
*13 Although fully cognizant of defendant counsel’s status in the action, plaintiff’s attorney nevertheless sent the said letter of August 18, 1971, directly to defendant (a violation of canon 9 of the Canons of Professional Ethics) requesting payment of the “above captioned indebtedness” (“ Balance due: $5,626.57”) under pain of having a “formal complaint being made” to “the regulatory authorities that issue licenses to brokers.” This letter can only mean and constitute a demand upon defendant to satisfy the balance of the indebtedness set forth or else suffer grievous consequences. It is not to be viewed in the same category as in Davison v. Klaess (280 N. Y. 252, 261), where the court rejected a claimed implied waiver of interest on the mere sending of a statement ‘ ‘ with the words ‘ Bal. due ’ without including a computation of interest in the final amount stated, ’ ’ since in that case prior statements sent to the defendant contained a legend “Accounts Overdue Subject To Interest.”
The rationale recognized by the court is that a payment and acceptance of principal where interest accrues either by agreement, implication or statute, does not constitute a waiver or extinguishment of interest unless some kind of an agreement can be spelled out that the payment should be in satisfaction of the entire debt. The letter to defendant made reference to ‘ ‘ the above captioned indebtedness ” and not to a judgment. Nevertheless, in order to rule out any issue of fact as to whether a debt or a judgment was being satisfied by defendant’s payment of $5,626.57, as demanded, it will be assumed that at the time of defendant’s receipt of the letter which antedates plaintiff’s restraining notice served on the Chemical Bank, defendant had knowledge of the existence of a judgment against him and applied for a bank loan to satisfy the judgment.
By statute, a judgment bears interest from date of its entry (CPLB 5003). The accruing interest represents a penalty. A promise of payment of interest by the debtor is implied. The promise is a fiction but is made real for the purpose of remedy against a misconduct giving rise to the judgment (O’Brien v. Young, 95 N. Y. 428; Feldman v. Brodsky, 12 A D 2d 347, affd. 11 N Y 2d 692). Plaintiff contends that the payment of $5,626.57 did not satisfy the judgment on which interest had accrued in the sum of $2,578.38.
The concept, “that payment of a lesser sum on the day in satisfaction of a greater, cannot be in satisfaction for the whole ” dates back to Pinnel’s case (5th Co. B. 117 resolved in 1602) and has exacted homage throughout the years despite the fact that *14 the “courts of this country in almost numberless instances * * * have rarely failed * * * to criticise and condemn [the concept’s] reasonableness, justice, fairness or honesty.” (Jaffray v. Davis, 124 N. Y. 164, 167). To pluck the thorn from the court’s conscience, the doctrine of accord and satisfaction was created — the giving of something additional with a lesser payment to satisfy the whole.
Thus, from the “ gift of a horse, hawk or robe ” with the lesser payment, the courts have added more sophisticated exceptions to the doctrine. A payment one day before the due date, the giving of security, a payment by a third person, or his indorsement of a note (Jaffray v. Davis, supra) or the giving up of some right as not filing a petition in bankruptcy (Knit Goods Exch. v. Kresoff, 102 Misc. 156; Radist v. Zidel, 12 A D 2d 648), or the acceptance of a lesser payment with knowledge of defendant’s insolvency (Reinecke v. Pelham, 199 So. 521 [La.]; Cloyne v. Levy, 26 Cal. App. 637; Melroy v. Kemmerer, 218 Pa. 381; 1 Am. Jur. 2d, Accord and Satisfaction, § 38, p. 337), and so on “until the so-called exceptions to the rule had been so numerous and varied as to raise a doubt whether they were not more often followed than the rule itself.” (Schwartz v. California Claim Serv., 52 Cal. App. 2d 47, 53). It would be illogical to apply the principle of accord and satisfaction to a liquidated claim and not to a judgment. There is no inviolability in a judgment which distinguishes it from liquidated demands as a subject of accord and satisfaction. “ The satisfaction of judgments for less than their face value is of everyday occurrence, and since every such settlement represents an agreement mutually satisfactory to the parties and fraught with some benefit to each, it should not be the policy of the law to discourage such sensible arrangements under which a creditor can satisfy a judgment for what he thinks it is worth, and a debtor can settle it for what he can. afford to pay.” (Schwartz v. California Claim Serv. supra, p. 55). In each instance that the creditor’s action outraged the court’s conscience, a new exception to that concept was created.
In the instant action plaintiff, in compliance with the court’s request made at the hearing on this motion, annexed to its memorandum of law photocopies of its diary entries. These entries disclose that plaintiff carried on a continuing course of communication directly with defendant and his counsel for payments on the indebtedness; that payments were made from time to time; that during the time of defendant’s intermittent payments, plaintiff issued a subpoena against defendant in an *15 enforcement of money judgment proceeding, redated its return day, and finally the subpoena was returned to plaintiff by a process server (entries from Sept. 16, 1969 to March 11, 1970). In addition, the entries reveal that defendant attempted to make a bank loan for $4,000 and was turned down (entries Oct. 14, 1970 to Oct. 23, 1970). Apparently, plaintiff found it too burdensome to have to persistently dun defendant and probably despaired of compelling payment through normal legal procedures with the result that plaintiff sent to defendant the aforedescribed letter. Its intendment was unmistakenly clear. If plaintiff did not receive the specified sum, it would resort to having defendant’s brokerage license revoked. Plaintiff conveyed in writing to defendant an offer that commanded defendant to accept. Implicit in the offer was the agreement of plaintiff not to proceed against defendant if he paid the sum, and that such a payment would satisfy plaintiff and release defendant of his debt obligation. What is here presented is another new exception to the rule, if such be needed by the court — an accord and satisfaction by force of threat. A demand by a mailed fist of a specified sum against an impecunious debtor is the equivalent of an offer to accept such sum. Thus, where the debtor in response to a threat, as here presented, raises the required funds to stave off disaster, a payment under such circumstances constitutes the extra consideration in satisfaction of the offer and results in a true accord and satisfaction. This determination envisions and rejects the possible contention of plaintiff of a reservation of right to claim interest at the time that the payment was tendered by defendant. Subdivision 1 of section 15-503 of the General Obligations Law provides: ‘ ‘ An offer in writing, signed by the offeror * * # to accept performance * # # in satisfaction or discharge in whole or in part of any * * * obligation * * * followed by tender of such performance by the offeree or by his agent before revocation of the offer, shall not be denied effect as a defense or as a basis of an action or counterclaim by reason of the fact that such tender was not accepted by the offeror or by his agent.” This section now declares a tender of performance in accordance with a written offer prior to withdrawal of the offer, a valid defense or a claim of accord and satisfaction. (See Note of Law Revision Commission under section 33-a of the Personal Property Law; 1937 Report of N. Y. Law Rev. Comm., pp. 201, 203.)
The determination by this court of an accord and satisfaction between the parties pales in significance to the condemnation *16 that this court must express of the tactics used to collect the judgment.. The postal service was used to convey to defendant that if he did not make payment of a balance due on his indebtedness, his license as broker may be revoked, and that if he is desirous of making payment “ prior to any formal complaint being made,” to contact the writer or his office. Plaintiff here made a direct frontal attack on defendant to collect the judg- . ment although knowing that he was represented by counsel. The intendment of the letter was clear. The threat implied was one of a direct economic injury to defendant accompanied by the embarrassment of loss of a license for misappropriation of premiums.
In People v. Fichtner (281 App. Div. 159, 165-166, affd. 305 N. Y. 864), the court in commenting on the extortion statutes stated: “ The law does not authorize the collection of just debts by threatening to accuse the debtor of a crime, even though the complainant is in effect guilty of the crime. In my opinion, it makes no difference whether the indebtedness for which a defendant demands repayment is one arising out of the crime for the prosecution of which he threatens the complainant, or is entirely independent and having no connection with the crime which forms the basis of the accusation.” Significantly, and as is applicable to the facts here, the court cited with approval, Matter of Sherin (27 S. D. 232, mod. as to payment of costs 28 S. D. 420); People v. Beggs (178 Cal. 79); People v. Wickes (112 App. Div. 39); and People v. Eichler (75 Hun 26 [Gen. Term, 1st Dept., 1894], app. dsmd. 142 N. Y. 642).
In the said cited cases, the courts held that a lawyer may not use threats to collect a debt or settle a case even if he does so without fee and that no precise language is required to spell out the threatened action that would be taken. It was sufficient that the letter was intended to convey a threat of some kind (see, also, People v. Thompson, 97 N. Y. 313). The threat need not be of criminal prosecution. “ It is a well-settled law in this State that fear of economic loss or harm satisfied the ingredient of fear ”. (People v. Dioguardi, 8 N Y 2d 260, 268.)
The Federal law as applicable to the use of the mails to convey a threat is similar to that of our State and has been so interpreted. See United States v. Pennell (144 F. Supp. 320); United States v. Provenzano (334 F. 2d 678); United States v. Tropiano (418 F. 2d 1069, cert. den. 397 U. S. 1021); United States v. De Cavalcante (440 F. 2d 1264); and United States v. Iozzi (420 F. 2d 512, cert. den. 402 U. S. 943).
*17 In view of the method employed to collect the principal balance due on the judgment, may this court now permit its judicial shield to be fashioned into a sword to enforce payment of interest? I think not. As stated in Feldman v. Brodsky (12 A D 2d 347, 350, affd. 11 N Y 2d 692), interest is accrued on a judgment not as a matter of contract but as a “ result of public policy. ’ ’ A judgment creditor may 11 be estopped by equitable considerations, or by his own acts, from enforcing the interest which the statute gives him.” This court cannot permit plaintiff to collect interest on the judgment nor allow it to profit by its own wrong. To do so would do violence to the fundamental principles of equity and justice. “ These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes.” (Riggs v. Palmer, 115 N. Y. 506, 511-512.)
Accordingly, defendant’s motion is granted to the extent of quashing the subpoena served on defendant in the enforcement of money judgment proceeding, vacating the restraining notice to garnishee served upon the Chemical Bank New York Trust Co. and directing the Clerk of this court to enter upon the judgment records «f this court that the judgment herein is satisfied.