Filed 3/14/16  IndyMac Venture v. Pinn CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| INDYMAC VENTURE, LLC,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>ALAN R. PINN et al.,<br><br>　　　　Defendants and Respondents. | B251218<br><br>(Los Angeles County<br>Super. Ct. No. GC046072) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, C. Edward Simpson, Judge.  Reversed.

Shumener, Odson & Oh, Robert J. Odson, and Staci M. Tomita for Plaintiff and Appellant.

Saied Kashani for Defendants and Respondents.

————————————

# INTRODUCTION

In this action for breach of a guaranty, IndyMac Venture, LLC (IndyMac Venture) appeals from the judgment entered after the trial court granted summary judgment in favor of the guarantors, brothers Alan and David Pinn, and from an order granting the Pinns' motion for attorneys' fees. Because the Pinns were not entitled to judgment as a matter of law on their defense of accord and satisfaction or on the ground that IndyMac Venture lacked standing to bring this action, we conclude the trial court erred in granting summary judgment. We therefore reverse the judgment and the subsequent order awarding attorneys' fees.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Bay Colony Loan, the Guaranty, and the April 2010 Agreement*

In September 2006 Bay Colony Investors II, Inc. (Bay Colony) obtained a loan of approximately $30 million from IndyMac Bank, FSB (IndyMac Bank) to finance a residential development project in Livermore, California. The loan was evidenced by a promissory note, a building loan agreement, and other documents. Alan and David Pinn, the principals of Bay Colony, guaranteed repayment of the loan pursuant to a separately executed "General Guaranty." In relevant part, the General Guaranty obligated the Pinns to pay when due all indebtedness evidenced by the note executed by Bay Colony and to perform all other obligations of Bay Colony under the loan documents.

When the Bay Colony loan matured in September 2008, the outstanding principal and interest became due. Shortly thereafter, IndyMac Federal Bank, FSB (IndyMac Federal) notified the Pinns that it had assumed IndyMac Bank's position as the lender on the loan, noted that the loan was in default, and proposed to negotiate a possible workout of the approximately $2.5 million Bay Colony owed on the note.

In April 2010, with the loan still in default and a balance due of approximately $3.2 million, Bay Colony and the Pinns executed a written agreement (the April 2010 Agreement) with IndyMac Venture, the entity now purporting to own the loan. The agreement provided for a short sale[1] of Bay Colony's development project: "Subject to the terms and conditions set forth in this Agreement, [Bay Colony] agrees to pay, and [IndyMac Venture] agrees to accept, in satisfaction of the amounts outstanding under the Loan (subject to the conditions of this Agreement), an amount (the 'Payoff Amount') equal to the greater of (i) $2,248,000.00 or (ii) the [net proceeds from the sale of the project]."

Referring to the General Guaranty, section 3 of the April 2010 Agreement provided: "[T]he Guaranty shall continue to remain in full force and effect, and . . . Guarantors shall not be released from anything related to the Loan. Guarantors (i) agree that this Agreement does not terminate or otherwise impair any of the obligations of Guarantors to [IndyMac Venture] under the Guaranty, (ii) reaffirm their obligations under the Guaranty in light of this Agreement, and (iii) acknowledge that their obligations under the Guaranty are separate and distinct from those of [Bay Colony] on the Loan. At any time, [IndyMac Venture] may take any action available to [it] under the Guaranty, including declaring any of the Guaranteed Obligations (as defined in the Guaranty) immediately due and payable. Nothing contained in this Agreement shall be construed to in any way affect any other obligations of Guarantors to [IndyMac Venture]."

---

[1] Although the Pinns now contend that the April 2010 Agreement was not a short sale agreement, both they and IndyMac Venture referred to it as a short sale during their negotiations. The April 2010 Agreement also meets the Supreme Court's recent definition of a short sale: "In a short sale, the lender agrees to release its lien on the borrower's property so that the borrower can sell the property to a third party. In exchange, the borrower agrees to give the lender all of the proceeds from the sale. Both parties know that the sale proceeds will fall short of the total amount that the borrower owes." (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 673.)

IndyMac Venture received the proceeds from the sale of the Bay Colony project in the amount of approximately $2.3 million. According to IndyMac Venture's calculations, this left approximately $880,000 due on the Bay Colony loan, for which IndyMac Venture contended the Pinns were liable under the guaranty.

### B. *IndyMac's Lawsuit Against the Guarantors*

In September 2010 IndyMac Venture filed this action against the Pinns and others to recover, among other things, the amount that remained due on the Bay Colony loan after IndyMac Venture received the short sale proceeds. The operative first amended complaint included a cause of action against the Pinns for breach of the General Guaranty.[2] IndyMac Venture alleged that, under the General Guaranty and the April 2010 Agreement, the Pinns were liable for the difference between the proceeds of the sale of the Bay Colony project and the amount due on the Bay Colony loan, which the Pinns refused to pay.

In June 2012 the Pinns moved for summary judgment or in the alternative for summary adjudication, contending they were not liable for any amount of the Bay Colony loan. The Pinns argued, among other things, that the General Guaranty only obligated them "to pay the indebtedness under the loan and/or the borrower's obligations," which the Pinns contended were satisfied when, pursuant to the April 2010 Agreement, IndyMac Venture agreed to accept the proceeds of the sale of the Bay Colony project as a payoff of the loan. The trial court granted the Pinns' motion for summary adjudication on causes of action relating to a separate loan transaction,[3] but denied the Pinns' motion

---

[2]     The first amended complaint also asserted a cause of action against the Pinns for breach of guaranty on another, unrelated loan and a cause of action for money had and received.

[3]     The assignee of the loan involved in those causes of action, IMV 11 Palm LLC, appealed, and we reversed. (See *IMV 11 Palm v. Pinn, et al.* (June 12, 2014, B246323 [nonpub. opn.].)

4

for summary adjudication on IndyMac Venture's remaining cause of action, for breach of the General Guaranty, apparently finding triable issues of fact regarding whether "the underlying obligation [had] been satisfied."[4]

In December 2012 IndyMac Venture moved for summary adjudication on its cause of action for breach of the General Guaranty. IndyMac Venture argued that the Pinns did not dispute they had failed to fulfill their obligations under the General Guaranty in September 2008 when Bay Colony defaulted on the loan and that, by contending the April 2010 Agreement released them from any further obligations, the Pinns were raising an affirmative defense they had waived by not pleading it. IndyMac Venture also argued that the April 2010 Agreement released only the borrower (i.e., Bay Colony) upon IndyMac Venture's receipt of the short sale proceeds, and did not, as a matter of law, release the Pinns from liability as guarantors for the amount due on the Bay Colony loan. The trial court denied IndyMac Venture's motion, finding a triable issue of fact regarding "[w]hether the obligation of the guarantors survived payment of the note."

In March 2013 the Pinns again moved for summary judgment, contending they were entitled to judgment as a matter of law on IndyMac Venture's remaining cause of action for breach of the General Guaranty. The Pinns argued that IndyMac Venture could not prove it held title to the loan. They also repeated their argument that they had no further obligation as guarantors to pay any amount of the Bay Colony loan because the

_____

[4] "Apparently" because, although a trial court denying a motion for summary judgment on the ground that there are triable issues of material fact must specify the facts as to which there is a triable controversy and the evidence indicating that a triable controversy exists (Code Civ. Proc., § 437c, subd. (g)), the trial court did not do so here. After noting that the Pinns argued "they are no longer liable on the Bay Colony loan because the underlying obligation has been satisfied and the 'enforceability period' has expired," the trial court ruled that the Pinns "have not demonstrated that the guaranties are time limited by an enforceability period." The court's order did not address the Pinns' other argument, that "the underlying obligation has been satisfied," but the court ultimately concluded that the Pinns "have not carried their burden of demonstrating that the [cause of action for breach of the General Guaranty] lacks merit."

proceeds of the short sale paid off the loan pursuant to the April 2010 Agreement. In support of this (renewed) argument, the Pinns submitted a copy of the original promissory note for the Bay Colony loan that had on it a "PAID" stamp dated April 9, 2010.[5]

This time, the trial court granted the Pinns' motion for summary judgment. The court noted that, "[b]y its own terms, the guaranty obligates the guarantors to pay 1. all indebtedness evidenced by the note, and 2. all obligations of the borrower to the lender. Following [payoff] of the note, there was no indebtedness or obligation of the borrower, and thus no further obligation under the guaranty." The court indicated that the evidence "that the noted had been marked 'paid'" established that the note had been paid off. The court also determined that the affirmative defense of accord and satisfaction, which the Pinns had pleaded in their answer, was "a sufficient basis for this motion." The court did not address the Pinns' alternative argument that IndyMac Venture could not prove it held title to the Bay Colony loan. The court entered judgment in favor of the Pinns, and IndyMac Venture timely appealed.

The court subsequently granted the Pinns' motion for attorneys' fees and awarded them $263,584 in fees and $3,168 in costs. IndyMac Venture timely appealed from the order granting the motion for attorneys' fees. We consolidated the two appeals.

## DISCUSSION

A.    *The Trial Court Erred in Granting the Pinns' Motion for Summary Judgment*

Summary judgment is appropriate ""only if 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'""" (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th

---

[5]    This appears to be the date of the sale of the Bay Colony project.

6

168, 178 (*B.H.*).) "'A defendant moving for summary judgment must show either (1) that one or more elements of the plaintiff's cause of action cannot be established, or (2) "that there is a *complete* defense to that cause of action." [Citation.]'" (*Melendrez v. Ameron Internat. Corp.* (2015) 240 Cal.App.4th 632, 637-638.) "''"To determine whether triable issues of fact do exist, we independently review the record that was before the trial court when it ruled on [the] motion. [Citations.] In so doing, we view the evidence in the light most favorable to . . . the losing parties, resolving evidentiary doubts and ambiguities in their favor."''" (*B.H.*, at p. 178.)

The Pinns did not attempt to show that IndyMac Venture could not establish the elements of its cause of action for breach of guaranty; i.e., that the General Guaranty executed by the Pinns was valid, that Bay Colony defaulted on the loan in 2008, and that the Pinns failed to perform under the General Guaranty. (See *Gray1 CPB, LLC v. Kolokotronis* (2011) 202 Cal.App.4th 480, 486 [elements of cause of action for breach of guaranty are "1) there is a valid guaranty, 2) the borrower has defaulted, and 3) the guarantor failed to perform under the guaranty"].) Rather, the Pinns contended they were entitled to summary judgment based on the affirmative defense of accord and satisfaction and because IndyMac Venture lacked standing to sue on the guaranty. We conclude that the trial court erred in granting the Pinns' second motion for summary judgment because there are triable issues of material fact regarding both the defense of accord and satisfaction and IndyMac Venture's standing to sue.

### 1. Accord and Satisfaction

"An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled." (Civ. Code, § 1521.) "Acceptance, by the creditor, of the consideration of an accord extinguishes the obligation, and is called satisfaction." (Civ. Code, § 1523.) Thus, "[a]n accord and satisfaction is the substitution of a new agreement for and in satisfaction of a preexisting agreement between the same parties," with "[t]he usual purpose [being] to

7

settle a claim at a lesser amount." (*In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1058; see 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 950, p. 1044.)

"'The question whether an agreement amounts to an accord and satisfaction is one of the intention of the parties and is therefore a question of fact.' [Citation.] The party asserting this defense bears the burden of establishing the accord and satisfaction." (*BII Finance Co. v. U-States Forwarding Services Corp.* (2002) 95 Cal.App.4th 111, 126 (*BII Finance*); *In re Marriage of Thompson*, *supra*, 41 Cal.App.4th at pp. 1058-1059.) Specifically, "[a] defendant asserting the defense of accord and satisfaction must establish '(1) that there was a "bona fide dispute" between the parties, (2) that the debtor made it clear that acceptance of what he tendered was subject to the condition that it was to be in full satisfaction of the creditor's unliquidated claim,[6] and (3) that the creditor clearly understood when accepting what was tendered that the debtor intended such remittance to constitute payment in full of the particular claim in issue.'" (*BII Finance*, at p. 126; accord, *FEI Enterprises, Inc. v. Kee Man Yoon* (2011) 194 Cal.App.4th 790, 803.)

The Pinns' accord and satisfaction defense is based on the April 2010 Agreement. "But an accord and satisfaction requires the existence of a bona fide dispute concerning the debt." (*In re Marriage of Sabine M. and Toshio M.* (2007) 153 Cal.App.4th 1203, 1215.) Where a debtor does not dispute the amount or validity of the debt, the defense of accord and satisfaction is not available. (See *Potter v. Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 597 ["for the principle of accord and satisfaction to apply in disposition of an unliquidated claim, there must be a 'bona fide dispute' between the parties"]; *In re Marriage of Sabine M. and Toshio M.*, at p. 1215 [no bona fide dispute where the debtor did not dispute amount or validity of debt]; *Kelly v. David D. Bohannon Organization* (1953) 119 Cal.App.2d 787, 792 [accord and satisfaction cannot be based on "a mere

---

[6] An unliquidated claim is a claim where the amount owed has not been determined. (See *Schwartz v. Cal. Claim Service* (1942) 52 Cal.App.2d 47, 54 [a liquidated claim "represents a legal duty to pay a definite sum in satisfaction of an obligation"].)

8

refusal to pay an undisputed claim"]; *Teledyne Mid-America Corp. v. HOH Corp.* (9th Cir. 1973) 486 F.2d 987, 992 [in order for there to be an accord and satisfaction, "there must first be a 'bona fide dispute' between the parties regarding the amount owed"].) The bona fide dispute must relate to the parties' rights or obligations under the pre-existing agreement. (See *Everhardy v. Union Finance Co.* (1931) 115 Cal.App. 460, 464 ["an agreement of accord and satisfaction presupposes a prior controversy concerning the relative rights of the parties under the pre-existing agreement"].) Otherwise, the debtor's promise to pay less than what is owed is not supported by consideration. (See *Berger v. Lane* (1923) 190 Cal. 443, 448 ["[w]ithout an honest dispute an agreement to take a lesser amount in payment for the liquidated claim is without consideration and void"]; *In re Marriage of Sabine M. and Toshio M.*, at p. 1215 ["'performance of a legal duty to a promisor which is neither doubtful nor the subject of honest dispute is not consideration'"].)

The Pinns did not carry their moving burden on the "bona fide dispute" element of their accord and satisfaction defense because they offered no evidence (or even argument) that, at the time they and IndyMac Venture executed the short sale agreement, there was any dispute over the amount or validity of the Pinns' debt under the General Guaranty. (See *Melendrez v. Ameron Internat. Corp.*, *supra*, 240 Cal.App.4th at p. 638 [defendant moving for summary judgment based on affirmative defense ""'"has the initial burden to show that undisputed facts support each element of the affirmative defense"'""].) Therefore, the Pinns never shifted the burden to IndyMac Venture to create a triable issue of material fact.

Moreover, there are triable issues of material fact regarding whether the parties intended the short sale agreement to be an accord and satisfaction. (See *BII Finance*, *supra*, 95 Cal.App.4th at p. 126; *In re Marriage of Thompson*, *supra*, 41 Cal.App.4th at pp. 1058-1059 ["[w]hether a transaction constitutes an accord and satisfaction depends on the intention of the parties as determined from the surrounding circumstances, including the conduct and statements of the parties, and notations on the instrument itself"].) These triable issues, which arise from the parties' competing interpretations of the short sale

agreement and the extrinsic evidence they invoke to support their interpretations, preclude summary judgment.

Where the parties dispute the meaning of the words used in a contract, the court "'must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning.'" (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1350 *(Wolf)*; see *id.* at p. 1351 ["[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible"].) Thus, "[t]he interpretation of a contract involves 'a two-step process: "First the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party."'" (*Wolf,* at p. 1351; see *Adams v. MHC Colony Park* (2014) 224 Cal.App.4th 601, 620 ["[t]he analysis of whether an ambiguity exists is not limited to the words of the contract"].) "'"If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract."'" (*Wolf,* at p. 1351.) "'[W]hether an ambiguity exists is a question of law, subject to independent review on appeal.'" (*Wolf*, at p. 1351, accord, *San Pasqual Band of Mission Indians v. State* (2015) 241 Cal.App.4th 747, 756.) Finally, contradictory extrinsic evidence, giving rise to two equally plausible interpretations of the language of a contract, presents a question of fact precluding summary judgment. (*Wolf*, at p. 1351, see *Walter E. Heller Western, Inc. v. Tecrim Corp.* (1987) 196 Cal.App.3d 149, 158.)

The Pinns interpret the April 2010 Agreement to mean that IndyMac Venture's receipt of the proceeds of the short sale extinguished the entire underlying debt on the Bay Colony loan, leaving the Pinns with no liability under the General Guaranty. The Pinns cite language in the agreement describing IndyMac Venture's receipt of the sale proceeds as a "payoff" and "repayment" of the loan "in satisfaction of the amounts outstanding under the Loan." They also point to the "PAID" stamp on the promissory

10

note as evidence that, consistent with their interpretation of the agreement, the entire debt was extinguished.

IndyMac Venture, on the other hand, interprets the April 2010 Agreement to mean that IndyMac Venture's receipt of the short sale proceeds would release the borrower, Bay Colony, from any further obligations, but would not release the Pinns from liability for the difference between the sale proceeds and the full amount owed on the Bay Colony loan.[7] IndyMac Venture points to section 3 of the April 2010 Agreement, which addresses the Pinns' obligations as guarantors and provides that "the Guaranty shall continue to remain in full force and effect," that "Guarantors shall not be released from anything related to the Loan," that "this Agreement does not terminate or otherwise impair any of the obligations of Guarantors to Lender under the Guaranty," and that the Pinns' "obligations under the Guaranty are separate and distinct from those of Borrower on the Loan." IndyMac Venture argues that this language reflects the parties' intention that the Pinns would remain liable for the full indebtedness on the Bay Colony loan, notwithstanding the borrower's discharge at a discounted amount, and that any contrary interpretation of the April 2010 Agreement would render section 3 surplusage.

IndyMac Venture also cites to extrinsic evidence supporting its interpretation, including the parties' preliminary drafts and emails they exchanged as they negotiated the April 2010 Agreement. Specifically, a preliminary draft of the agreement provided that, after a defined "Guaranty Enforceability Period," the Pinns would be released from their obligations as guarantors on the Bay Colony loan if they executed a "Third Modification Agreement" and "Community Center Deed of Trust" relating to a separate loan with which the Pinns were involved, referred to as the "Brentwood" or "Palmilla" loan. When the Pinns returned the draft with those portions relating to the Brentwood loan crossed out, IndyMac Venture's representative responded by email: "So I'm clear, did you cross out the sections you did because you are not agreeing to sign the 3rd modification and

---

[7] With some exceptions not applicable here, California's antideficiency statutes generally do not apply to guarantors. (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 632; *Talbott v. Hustwit* (2008) 164 Cal.App.4th 148, 151.)

11

sign the deed of trust, or did you have an alternative reason?" The Pinns wrote back: "Alan and Dave Pinn would like to address that issue separately after the Portola site [the Bay Colony project] gets off the books . . . that's all." IndyMac Venture's representative then sent an email explaining why IndyMac Venture wanted the Pinns to execute the Third Modification Agreement and Community Center Deed of Trust and stated: "To simplify our short sale deal, it looks like this: [¶] Sign the short sale docs = transaction closes, we get paid, you get the land off your books. [¶] Sign the deed and the 3rd modification to add back the Community Center = release of the personal guaranty(s) on the Portola Loan after 91 days. [¶] The short sale can close, but the guaranty will not be released until the requirements are fulfilled." The Pinns' representative wrote back: "I spoke with Alan Pinn and he is agreeable to the signing of the short sale docs . . . to allow the immediate sale of the Portola property which will net One West Bank $2,250,000.00. He realizes the difference between that sale amount and the $3 million loan demand will remain on via the personal guarantees until the Palmilla development issues are worked through."

This evidence, especially the Pinns' acknowledgement that "the difference between [the short] sale amount and the $3 million loan demand will remain on via [their] personal guarantees," indicates that the parties intended that IndyMac Venture's receipt of the short sale proceeds would not extinguish the entire underlying debt on the Bay Colony loan, but only the borrower's obligations, so that IndyMac Venture's interpretation of the short sale agreement is eminently plausible. (See *Marzec v. Cal. Public Employees Retirement Sys.* (2015) 236 Cal.App.4th 889, 909-910 ["'[t]he fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract'"].) The April 2010 Agreement is reasonably susceptible to IndyMac Venture's interpretation, and the conflicting extrinsic evidence makes summary judgment inappropriate.

Rather than address this extrinsic evidence, the Pinns merely insist that the "PAID" stamp on the promissory note confirms their (competing) interpretation of the agreement. Even if the "PAID"-stamped note supports the Pinns' interpretation of the

April 2010 Agreement, however, it is not the only evidence of the parties' intent. The extrinsic evidence submitted by IndyMac Venture, and the email exchanges between the parties in particular, at a minimum, makes IndyMac Venture's interpretation of the agreement reasonable and creates triable issues of fact that preclude summary judgment. (See *Wolf*, *supra*, 114 Cal.App.4th at p. 1351 ["'[w]hen two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory'"].)

Contrary to the Pinns' contention, the "PAID" stamp on the promissory note does not establish as a matter of law that the entire underlying debt was extinguished. (See *Bowden v. Bank of Am. Nat. Trust & Sav. Assn.* (1950) 36 Cal.2d 406, 410 ["[t]he fact that the original note is marked 'paid' . . . is not conclusive evidence that the indebtedness has been discharged"]; *Cohen v. Kaufman* (1948) 89 Cal.App.2d 463, 464-466 ["[t]he fact that a note is stamped 'Paid' is not conclusive of payment"].) Commercial Code section 3604, subdivision (a), does not, as the Pinns argue, indicate otherwise. That statute merely provides, in relevant part, that "[a] person entitled to enforce an instrument . . . may discharge the obligation of a party to pay the instrument . . . by an intentional voluntary act, such as . . . addition of words to the instrument indicating discharge . . . ." (Com. Code, § 3604, subd. (a).) That language is consistent with IndyMac Venture's version of what occurred here: the note was stamped "PAID" upon discharging the obligation of "a party," which was the borrower, not the guarantors.

Finally, the Pinns suggest that under Civil Code section 2839 they cannot be liable as guarantors after the borrower's obligations have been discharged. (See Civ. Code, § 2839 ["[p]erformance of the principal obligation, or an offer of such performance, duly made as provided in this code, exonerates a surety"].) In the General Guaranty, however, the Pinns waived "any rights, defenses or benefits that are or may be available to [them] by reason of Sections 2787 to 2855, inclusive, of the California Civil Code," which Civil Code section 2856, subdivision (a)(1), permits. (See Civ. Code, § 2856, subd. (a)(1) [a guarantor may waive any "rights and defenses that are or may become available to the

13

guarantor . . . by reason of Sections 2787 to 2855, inclusive"].)  Although the Pinns suggest that such waivers are unenforceable because they are contrary to public policy, their only support for this suggestion is dicta in a case that pre-dates the current version of Civil Code section 2856.  (See *Durgin v. Kaplan* (1968) 68 Cal.2d 81, 89, fn. 8 [questioning the validity of any guaranty provision waiving the protections of Civil Code sections 2822 and 2839, which, contrary to public policy, "could require a guarantor to pay the debt of his principal many times over before becoming exonerated"].)  In enacting the current version of Civil Code section 2856 in 1996, the Legislature specifically stated:  "It is the intent of the Legislature that the types of waivers described in Section 2856 of the Civil Code do not violate the public policy of this state."  (Stats. 1996, ch. 1013, § 3.)  We defer to that statement.  (See *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71 ["aside from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state"]; accord, *Diego v. Pilgrim United Church of Christ* (2014) 231 Cal.App.4th 913, 921; see *Gray1 CPB, LLC v. Kolokotronis*, *supra*, 202 Cal.App.4th at pp. 484, 491 [notwithstanding public policy favoring such protections, guarantor's waiver of rights and defenses under surety statutes and antideficiency legislation, including Civil Code section 2839, were enforceable because "section 2856 of the Civil Code expressly allows guarantors to waive those protections"].)

        2.     IndyMac Venture's Standing to Sue

The Pinns also argue that IndyMac Venture is not the real party in interest and lacks standing to sue on the General Guaranty because IndyMac Venture does not own the Bay Colony loan.  (See Code Civ. Proc., § 367 ["[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute"]; *In re Estate of Bowles* (2008) 169 Cal.App.4th 684, 690 ["[a] party who is not the  real party in interest lacks standing to sue because the claim belongs to someone else"]; *Redevelopment Agency of City of San Diego v. San Diego Gas & Elec. Co.* (2003) 111 Cal.App.4th 912, 920 ["[a] party who is not the real party in interest lacks standing to

sue"].) The Pinns argue that, while they submitted evidence indicating that the Bay Colony loan was in fact transferred to an entity other than IndyMac Venture,[8] IndyMac Venture failed to submit admissible evidence that it was validly assigned the loan. IndyMac Venture, however, submitted evidence creating triable issues of material fact regarding whether it owns the Bay Colony loan.[9]

The Pinns do not dispute that the Federal Deposit Insurance Corporation (FDIC), acting as receiver for IndyMac Bank, validly transferred the Bay Colony loan from IndyMac Bank, the entity that made the loan, to IndyMac Federal. What the Pinns dispute is IndyMac Venture's account of what happened next: that the FDIC, acting as receiver for IndyMac Federal, transferred the loan to IndyMac Venture. The Pinns note that the Asset Contribution and Assignment Agreement (ACA) by which the FDIC supposedly conveyed the Bay Colony loan to IndyMac Venture transferred only those IndyMac Federal assets that were listed on an "Attachment A" to the ACA. The Pinns argue that, because the copy of Attachment A in evidence does not list any assets,[10] "there is a complete failure of proof that the Bay Colony loan was assigned to [IndyMac Venture]."

---

[8] The Pinns submitted evidence that OneWest Bank wrote them, claimed that it was the holder of the Bay Colony loan, and demanded payment. The Pinns concede, however, that IndyMac Venture submitted evidence showing that the communication from OneWest Bank was a mistake and that this "created a factual issue as to whether OneWest owned [the Bay Colony] loan."

[9] The Pinns do not dispute that, if the Bay Colony loan was validly transferred to IndyMac Venture, IndyMac Venture also received the right to enforce the General Guaranty on that loan. (See Civ. Code, § 1084 ["[t]he transfer of a thing transfers also all its incidents, unless expressly excepted"]; *Champion Home Builders Co. v. Sipes* (1990) 219 Cal.App.3d 1415, 1424 ["[t]he transfer of the debt from [one entity] to [another entity] included by operation of law the guaranty because the transfer of a thing transfers the incidents"].)

[10] Attachment A reads in its entirety: "ATTACHMENT A [¶] LOAN SCHEDULE [¶] SEE SECTION VI (GROUPS 6-8), SCHEDULES TO ASSET CONTRIBUTION AND ASSIGNMENT AGREEMENT, ON THE SCHEDULES CD."

15

The Pinns are mistaken. In opposition to the Pinns' second motion for summary judgment, IndyMac Venture submitted the declaration of Daris Buckler, a former officer of IndyMac Bank and IndyMac Federal, who stated that "[t]he FDIC, as receiver for IndyMac Federal, transferred certain assets of IndyMac Federal to [IndyMac Venture], including the obligations that are the subject of this action, pursuant to [the ACA]." And Buckler had the personal knowledge to make this statement: she was a custodian of records for IndyMac Federal and IndyMac Venture documents pertaining to the Bay Colony loan, and, as attorney-in-fact for the FDIC, she executed the documents necessary to transfer the Bay Colony loan to IndyMac Venture pursuant to the ACA.

IndyMac Venture also submitted an "Assignment and Assumption of Loans and Loan Documents" (Assignment) that "transfer[ed], assign[ed], grant[ed] and convey[ed]," pursuant to the ACA, the Bay Colony loan and loan documents from IndyMac Federal to IndyMac Venture. This document is executed by Ms. Buckler, as attorney-in-fact for the FDIC and receiver for IndyMac Federal. Ms. Buckler's authority to act as the FDIC's attorney-in-fact is evidenced by a "Limited Power of Attorney," executed by the FDIC, as receiver for IndyMac Federal, that authorizes Ms. Buckler to execute on behalf of the FDIC those documents necessary to transfer assets to IndyMac Venture pursuant to the ACA.[11]

The Pinns concede that the Assignment purports to transfer the Bay Colony loan from IndyMac Federal to IndyMac Venture, but contend the Assignment is "meaningless" because Ms. Buckler did not have authority to execute it. They dismiss the Limited Power of Attorney as "not authenticated and not recorded." These objections do not have merit. The Limited Power of Attorney includes a notarized certificate, which the Pinns do not challenge, that acknowledges the instrument was the duly authorized act of the FDIC. An acknowledged document is presumed to be authentic and is "prima

---

[11] The Pinns complain that some documents executed by Ms. Buckler as attorney-in-fact for the FDIC, as receiver for IndyMac Federal, were signed after her authority under the Limited Power of Attorney had expired. This is not true of the Assignment.

16

facie evidence that the instrument is the duly authorized act of the entity named in the instrument." (Civ. Code, § 1190; see Evid. Code, § 1451 [certificate of acknowledgment "is prima facie evidence of the facts recited in the certificate"]; *Jacobson v. Gourley* (2000) 83 Cal.App.4th 1331, 1334 [document entitled to statutory presumption under Evid. Code § 1451 is authentic unless the adverse party introduces evidence sufficient to sustain a finding that it is not genuine]; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2015) ¶ 8:361, Ch. 8C–B ["'[a]cknowledged writings' . . . are presumed to be authentic"].)[12]

B.    *Because the Trial Court Erred in Granting Summary Judgment, the Order Awarding Attorneys' Fees and Costs Must Be Reversed*

After granting summary judgment in favor of the Pinns, the trial court awarded them, as prevailing parties, $263,584 in attorneys' fees and $3,168 in costs pursuant to an attorneys' fees provision in the General Guaranty. Because we reverse the judgment on which the award of attorneys' fees and costs was based, we also reverse the order awarding the Pinns attorneys' fees and costs. (See *Harris v. Wachovia Mortg., FSB* (2010) 185 Cal.App.4th 1018, 1027 [award of attorneys' fees and costs "necessarily falls with the judgment"]; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053 [reversal of the judgment compels reversal of the award of fees as costs to prevailing party based on the judgment]; *Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402 ["[a]n order awarding [attorneys' fees and] costs falls with a reversal of the judgment on which it is based"].)

---

[12]    The Pinns also argue that the Limited Power of Attorney authorized Ms. Buckler to execute only those documents transferring loans pursuant to the ACA and that, because the Bay Colony loan was not included in the ACA's Attachment A, the Limited Power of Attorney did not authorize Ms. Buckler to execute documents transferring the Bay Colony loan. As noted, however, IndyMac Venture submitted evidence that the Bay Colony loan was transferred pursuant to the ACA.

17

## DISPOSITION

The judgment and the order awarding attorneys' fees and costs are reversed. Appellant is to recover its costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

ZELON, J.